**LANSTON v. AMERICAN SECURITY & TRUST CO.**

**No. 74.**

Municipal Court of Appeals for the District of Columbia.

June 8, 1943.

Mark P. Friedlander, of Washington, D. C., for appellant.

Llewellyn C. Thomas and G. Bowdoin Craighill, both of Washington, D. C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

Appellant as wife of Aubrey Lanston and later as his widow was entitled to receive certain payments, hereinafter described, from the estate of her husband's father, Tolbert Lanston. Appellee is testamentary trustee of that estate. Appellant sued appellee for certain accumulated payments due her. The only defense was by way of set-off for $1,074.34 which the trustee claimed to have overpaid appellant. Crediting appellant with $750 admittedly due her the trustee claimed a net of $324.34. From a judgment entered in favor of the trustee for that amount, this appeal was taken.

The amounts which appellant was entitled to received from the estate were fixed (a) during the life of her husband by an equity decree, and (b) after her husband's death, by the will of Tolbert Lanston. The decree was entered in 1914 in a maintenance suit [1] she had filed against her husband, and in which the present appellee was a party defendant. Under the decree, to which her husband consented, appellant became entitled to receive, and the trustee was required to pay over to her, during the periods pertinent to this inquiry: "A full three-fifths portion of all net moneys by it collected from the trust estate by it held as Trustee, payable to said Aubrey Lanston, under the terms and provisions of the said Last Will and Testament of Tolbert Lanston, deceased; payment of the said full three-fifths portion to the said complainant by the said Trust Company shall be made in quarterly installments during the joint lives of the said complainant and the defendant, Aubrey Lanston."

Under the will of Tolbert Lanston she became entitled to receive $1,000 per year from the trust estate, upon the death of her husband.

For some years Aubrey Lanston had been living in Hungary and the trustee had

---

[1] Equity No. 32117 in the then Supreme Court of the District of Columbia (now the District Court of the United States for the District of Columbia).

been transmitting to him through the American Express Company such payments as were due from the trust funds. In December, 1941 that company notified the trustee that because of war conditions no future transmittals could be made to Hungary. Aubrey Lanston died there on January 19, 1942. Notice of his death did not reach the trustee until June 16, 1942. It came through the State Department of this country which had received the information from the American Legation at Bern, Switzerland.

Because of the war the trustee did not attempt to send any payments to Aubrey Lanston after December, 1941. It did, however, continue to pay to appellant the three-fifths portion to which she would have been entitled if her husband were still alive. It was those payments which the trustee claimed constituted the overpayment. The trial court held that the trustee was entitled to an affirmative credit by way of recoupment or set-off against appellant's claim. We think the ruling was correct, for three reasons.

■ 1. Appellant's rights under the decree in the maintenance suit ended with her husband's death. The decree, by its own terms, provided for payments "during the joint lives" of Aubrey Lanston and his wife. It specifically recited that the payments to Mrs. Lanston were to be out of funds payable to Aubrey Lanston "under the terms and provisions of the Last Will and Testament of Tolbert Lanston." That will entitled appellant to $1,000 per year as the surviving widow of Aubrey Lanston. Taking the will and the decree together, it is clear that appellant was to receive three-fifths of her husband's income from the estate so long as he lived, and after his death the $1,000 per year provided in the will.

We therefore decide that in the circumstances of this case the controlling date for the purpose of fixing the amounts due was the date of the death of Aubrey Lanston and not the date when notice thereof reached the trustee.

2. The over-payment was made by the trustee because of an honest mistake of fact, that mistake being the assumption that Aubrey Lanston was alive during the five month period when he was actually dead. That mistake of fact was untainted by any negligence on its part. In view of conditions as they were and the extreme difficulty of communication with a country like Hungary which had declared war upon us it cannot be said that the trustee was derelict in not becoming informed sooner of the death of Aubrey Lanston.

■ We therefore follow the established rule that one who pays money to another under an honest mistake of fact may, in the absence of an equitable defense, recover the money so paid. Prowinsky v. Second National Bank, 49 App.D.C. 363, 265 F. 1003, 12 A.L.R. 358; Hibbs v. Beall, 41 App.D.C. 592; Strauss v. Hensey, 9 App.D.C. 541.

■ 3. Appellant argues that because the overpayment was made under a court decree it cannot be recovered, but as above stated we think appellant's rights under the decree expired upon the death of the husband.[2]

Nor in approving the trustee's claim is there involved, as appellant contends, either a collateral attack on the equity decree or a disregard thereof, but in fact a precise recognition of the rights of the parties as fixed by that decree.

Affirmed.

---

[2] On October 7, 1942, the maintenance suit was dismissed by the District Court on motion of the trustee, upon its suggestion of the death of Aubrey Lanston.