Tsang **CHANG**, Appellant,

v.

**LOUIS & ALEXANDER, INC.**, Appellee.

**LOUIS & ALEXANDER, INC.**, Appellant,

v.

Tsang **CHANG**, Appellee.

Nos. 90–CV–748, 90–CV–803.

District of Columbia Court of Appeals.

Argued Oct. 19, 1993.

Decided Aug. 18, 1994.

Frederic W. Schwartz, Jr., Washington, DC, for Tsang Chang.

Michael M. Hicks, Washington, DC, for Louis & Alexander, Inc.

Before TERRY, FARRELL, and KING, Associate Judges.

TERRY, Associate Judge:

These are cross-appeals arising from a commercial landlord-tenant dispute. The litigation stems from the fact that, although the property at issue is treated as one unit for the assessment of taxes and metering of utilities, it has been subdivided and rented out to at least three different tenants. One of those tenants in the late 1980's was Tsang Chang, who ran a small Chinese restaurant called "Mr. Eggroll." The landlord, Louis & Alexander, Inc., sued for possession, alleging that Mr. Chang had failed to pay pass-through charges for property taxes, electricity, and gas. Mr. Chang counterclaimed for the cost of roof repairs. Also at issue in the trial court was whether either of the parties was entitled to attorneys' fees as provided in the lease and, if so, which one. We affirm in part, reverse in part, and remand.

I

In November 1983 Louis & Alexander, Inc., leased the property from Gartenhaus Associates.[1] On August 23, 1987, Louis & Alexander subleased one part of the property to Mr. Chang for a term of seventeen and one-half years.[2] Paragraph 15 of the lease required the landlord (Louis & Alexander) to perform all roof repairs on the building that were not caused by the negligence of Mr. Chang. Under paragraph 23, Mr. Chang agreed to pay fifty percent of the real estate taxes "on the building and land on which the building is situated." Paragraph 24 stated that Mr. Chang "shall pay for all telephone and additional electrical services used in the demised premises."[3]

The lease between Mr. Chang and Louis & Alexander also incorporated the master lease between Louis & Alexander and Gartenhaus Associates.[4] One provision in the master lease stated that "in the event of any breach or threatened breach by either Landlord or Tenant, the prevailing party shall be entitled to recover any and all reasonable expenses the prevailing party may incur in connection with its efforts to secure such injunctive relief or other remedy at law or in equity, such as court costs, printing costs and attorneys' fees."

On November 30, 1987, the parties modified the lease by a letter agreement,[5] which included a provision for conducting an electrical usage study to determine Mr. Chang's share of the electric bill. Under this agreement, the landlord was to furnish Mr. Chang with the names of three electrical contractors who would do the study at a cost of not more than $1,500, to be shared equally by landlord and tenant; Mr. Chang would then select one of the three contractors on the list. Pending completion of the study, Mr. Chang agreed to pay eighty percent of the electric bill. Mr. Chang also agreed under the letter agreement to pay "one hundred percent (100%) of the gas bill." About two weeks later the

1. Our factual summary is based mainly on the trial court's written findings of fact.

2. The property is situated at the corner of Columbia Road and Adams Mill Road, N.W. For tax purposes it is identified as Lot 511, Square 2580, and taxed as a unit; at all times relevant to this case, however, it was subdivided into three parts. First, there was the Mr. Eggroll restaurant, located at 1801 Adams Mill Road. Second, there was the Capital Bank, a separate building with an entrance facing the corner, which also used the address of 1801 Adams Mill Road. Third, there was a brick building, two stories taller than either the bank or Mr. Eggroll, known as 1789 and 1789–A Columbia Road. The premises used by the bank were formerly occupied by a Gartenhaus Fur Salon.

3. The matter of utility bills was discussed further in an addendum to the lease entitled "Exhibit D," which said:

The Landlord and the Tenant will cause a relative usage study to be undertaken by PEP-CO [Potomac Electric Power Company] bearing in mind the relative usage of each of the tenants located in the Columbia Road property.... The results of this study will be conclusive as to the energy expense to be borne by the Tenant. This study will encompass all energy usages within the space at Columbia Road with the exception of natural gas which will be solely borne by the Tenant. Until completion of this study, all electrical and energy expense will be borne by the Tenant and subsequently adjusted after the completion of the study.

4. The master lease identified the property as 1789 Columbia Road, N.W.

5. Although Mr. Chang occupied the premises at 1801 Adams Mill Road, the letter agreement was captioned "Re: 1789 Columbia Road, N.W., Mr. Tang [sic] Chang (Tenant)."

landlord sent Mr. Chang the names of two (not three) contractors willing to conduct the electrical study, but at a cost of $3,000 to $4,000, not the agreed-upon $1,500. Mr. Chang did not select either of the two contractors; instead, he stopped paying his eighty percent share of the electric bill, beginning in February 1988.

After several months had passed, the landlord filed a complaint for possession of real estate alleging that, under the terms of the modified lease, Mr. Chang owed fifty percent of the real estate taxes and eighty percent of the electric bills that he had ceased to pay. Mr. Chang filed a counterclaim seeking reimbursement for roof repairs and moved for sanctions under Super.Ct.Civ.R. 11.

The trial court, after a non-jury trial, found Mr. Chang liable for half of the real estate taxes, but only on the portion of the property occupied by Mr. Eggroll. As to the electricity, the court directed that an electrical usage study be performed to determine Mr. Chang's share; in the meantime, Mr. Chang was ordered to deposit $23,165.63 in the court registry to cover his eighty percent share of the electric bills through August 1989. The cost of the study was to be borne by both parties, but Mr. Chang's portion of that cost was limited to $750, his half of the originally agreed-upon sum of $1,500. The court also ruled that Mr. Chang was liable for "all natural gas charges" for the entire premises, including 1789 Columbia Road. It denied his request for Rule 11 sanctions, finding that "there was no conduct on the part of [the landlord] or counsel which warrants the imposition of sanctions." In addition, the court denied Mr. Chang's counterclaim for roof repairs, noting that the evidence was in conflict regarding the cause of the roof damage and that Mr. Chang had not submitted any documentary evidence in support of his claim. Finally, after allowing the landlord to amend its pleadings, the court awarded $20,935.57 in attorneys' fees to the landlord "as the substantially prevailing party," offset by an award of $10,000 in attor-

neys' fees to Mr. Chang. Both parties filed timely notices of appeal.[6]

## II

Most of the parties' contentions on appeal, reduced to their essence, are challenges to the factual findings of the trial court. The tenant contests the court's rulings on the electric and gas bills and the roof repairs; the landlord disputes the resolution of the property tax issue. Because this case was tried without a jury, we review it "both as to the facts and the law, but the judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." D.C.Code § 17–305(a) (1989); see, e.g., Hershon v. Hellman Co., 565 A.2d 282, 284 (D.C. 1989); Auxier v. Kraisel, 466 A.2d 416, 418 (D.C.1983). Applying this familiar standard, we affirm all of the challenged rulings except the one involving the gas bill.

### A. The Electric Bill

The calculation of the electricity pass-through charge required an electrical usage study. The trial court found that the landlord had supplied Mr. Chang with the names of two contractors who would conduct the study for $3,000 to $4,000, although the landlord had agreed to name three contractors, not two, and to keep the cost at or below $1,500. The court also found that Mr. Chang did not select a contractor from the landlord's list, but instead stopped paying for electricity altogether. Because neither party had fully complied with the letter agreement, the court ruled that it was still "in effect and enforceable" and ordered the parties to have the usage study completed within five weeks, with the landlord to pay all but $750 of the cost.

■ Mr. Chang contends that the court misread the contract. Under the original lease signed by the parties on August 23, 1987, Mr. Chang agreed to pay "for all telephone and additional electrical services used in the demised premises." Mr. Chang as-

no longer occupies the Mr. Eggroll premises. These appeals, however, are not moot because they involve the payment of several sums of money which are still in dispute.

serts that under this provision he is responsible only for "additional" electrical services over and above some undetermined baseline. Arguing that the landlord failed in its proof because it presented no evidence of what "additional" meant, Mr. Chang concludes that he is not obliged to pay for any electricity at all.

This is an unreasonable and erroneous argument. Regardless of what "additional" may have meant in the original lease, that provision was nullified and superseded by the letter agreement of November 30, 1987. "The parties to a contract are free to modify that contract by mutual consent." *Hershon, supra*, 565 A.2d at 283 (citations omitted). Moreover, "a contract containing a term inconsistent with a term of an earlier contract between the same parties regarding the same subject matter should be interpreted to rescind the inconsistent term in the earlier contract." *Egan v. McNamara*, 467 A.2d 733, 740 (D.C.1983) (citation omitted). Mr. Chang's argument, relying as it does on a nullified clause from the earlier contract, therefore fails. The trial court did not err in its resolution of the electricity issue.

### B. *The Gas Bill*

■ Mr. Chang also challenges the trial court's ruling that he must pay for "all natural gas charges under the lease and letter agreement of November 30, 1987, which itself refers to premises at 1789 Columbia Road." Under the terms of the letter agreement, the parties agreed that Mr. Chang would "pay one hundred percent (100%) of the gas bill." The issue at trial was whether this language obligated Mr. Chang to pay for all of the gas used on the entire property, including the premises occupied by the other tenants, or whether he was required to pay for only the gas used by Mr. Eggroll.

We hold that, to the extent that there is any ambiguity about the gas usage, Mr. Chang is liable only for the gas he used while operating Mr. Eggroll. In interpreting the letter agreement, we must "determin[e] what a reasonable person in the position of the parties would have thought the disputed language meant." *1010 Potomac Associates v. Grocery Manufacturers of America, Inc.*, 485 A.2d 199, 205 (D.C.1984) (citation omitted); *see Dodek v. CF 16 Corp.*, 537 A.2d 1086, 1093 (D.C.1988) (when interpreting a contract, court should look to the intent of the parties). Because the letter agreement was a modification of the earlier lease *of the Mr. Eggroll premises at 1801 Adams Mill Road*, no reasonable person in the position of these parties would read the letter agreement and conclude, merely on the basis of a mistake in the caption of the letter, that the letter agreement actually applied to 1789 Columbia Road rather than, or in addition to, 1801 Adams Mill Road. Thus, assuming that any of the other tenants used natural gas,[7] Mr. Chang is liable only for the gas used by Mr. Eggroll.

### C. *Real Property Taxes*

■ The landlord argues that the trial court erred when it ruled that Mr. Chang owed nineteen percent of the property taxes, rather than the fifty percent claimed by the landlord. The lease stated, "Tenant shall pay to Landlord as additional rent fifty (50%) percent of the real estate taxes and assessments levied on the building and land on which the building is situated."

At trial the parties disagreed about the meaning of the phrase "the building and land on which the building is situated." Mr. Chang maintained that this language meant that he owed half of the taxes for the portion of 1801 Adams Mill Road that he leased, *i.e.*, Mr. Eggroll. The landlord argued that this term meant Mr. Chang was obligated to pay half of the taxes for the entire property, including the bank and the building at 1789 Columbia Road. The trial court ruled that because the entire property had not been leased to Mr. Chang, the language at issue referred to the portion of the property occupied by Mr. Eggroll, which was thirty-eight percent of the entire property. The court accordingly calculated his share of the taxes as half of thirty-eight percent, in accordance

---

7. At trial the corporate landlord presented the testimony of John Courembis, its president, who said that Mr. Chang "was to pay gas directly, all the gas, because no one else in the building used gas." This testimony suggests that Mr. Chang's share of the gas bill may be 100 percent.

with the lease. We find no error in this ruling.

■ There were three buildings on the property, only one of which was occupied by Mr. Eggroll. Since the tax clause of the lease refers to "building" in the singular, not "buildings" in the plural, we think "a reasonable person in the position of the parties"[8] would almost certainly read it as applying only to the Mr. Eggroll building, not the entire lot. But we need not decide that point conclusively because the result would be the same even if the language in the lease were ambiguous. Assuming for the sake of argument that the tax clause in the lease could be read as referring either to the entire property or just the portion leased by Mr. Chang, it was for the trial court, as trier of fact, to resolve that ambiguity because the meaning of ambiguous contracts is a question of fact. *See 1901 Wyoming Avenue Cooperative Ass'n v. Lee*, 345 A.2d 456, 461 n. 8 (D.C. 1975). Thus our role on appeal is limited; "we will reverse only if the trial court's determination is 'plainly wrong or without evidence to support it.'" *Waverly Taylor, Inc. v. Polinger*, 583 A.2d 179, 182 (D.C.1990) (quoting D.C.Code § 17–305(a)). Here the trial court determined that Mr. Chang was liable for his half of the taxes only on the portion of the property that he occupied. This conclusion is amply supported by the evidence of record, and we will not disturb it.[9]

### III

Finally, we must consider who, if anyone, is the prevailing party entitled to attorneys' fees under a provision in the master lease which states: "[I]n the event of any breach or threatened breach by either Landlord or Tenant, the prevailing party shall be entitled

to recover any and all reasonable expenses the prevailing party may incur" in any ensuing litigation. The trial court awarded $20,-935.57 in attorneys' fees to the landlord as "the substantially prevailing party," but then reduced that amount by awarding $10,000 in attorneys' fees to Mr. Chang. Implicit in the trial court's allocation of these fees was the conclusion that both parties had prevailed to some extent.

Both parties now challenge the trial court's allocation of fees, and their arguments are the same: that under the master lease there can be only one prevailing party. Thus, they contend, the trial court erred when it tried to steer a middle course because the master lease takes an all-or-nothing approach to the award of attorneys' fees. We find no error in the court's decision to award fees to both parties, but we must remand the case so that the fees may be recalculated in part.

■ Mr. Chang argues that the trial court erred because he, and not the landlord, was the prevailing party on the issues of the electricity pass-through charge and the real estate taxes. The landlord contends on the other hand that it, not Mr. Chang, was the prevailing party because the trial court entered a judgment for possession of the property after Mr. Chang had stopped paying his share of the real property taxes and electric bills. Thus, argues the landlord, Mr. Chang could not be deemed the prevailing party, and the $10,000 offset should be vacated.

■ Neither party's argument is convincing. Mr. Chang's assessment of who prevailed at trial is one-sided, but so is the landlord's. In light of *Trans–Lux Radio City Corp. v. Service Parking Corp.*, 54 A.2d 144 (D.C.1947), and its progeny, the mere fact that the landlord obtains a judgment for

---

8. *1010 Potomac Associates, supra*, 485 A.2d at 205.

9. Mr. Chang raises two additional claims of error, both of which are without merit. First, he challenges the trial court's conclusion that he was not entitled to a credit for roof repairs. On that issue the court resolved the conflicts in the evidence against Mr. Chang and found for the landlord, noting that Mr. Chang had failed to present any documentary evidence supporting his counterclaim. Because that finding was not

clearly erroneous, we must affirm. *See* D.C.Code § 17–305(a) (1989). Second, Mr. Chang argues that his request for Rule 11 sanctions should be remanded for a hearing. The trial court stated in its order, however, that it had found no conduct by the landlord or its counsel warranting the imposition of Rule 11 sanctions. We see no abuse of discretion in that ruling. *See Montgomery v. Jimmy's Tire & Auto Center, Inc.*, 566 A.2d 1025, 1029 (D.C.1989).

**1116**

possession does not mean that the landlord is the prevailing party for all purposes. "Under the *Trans–Lux* line of cases, a court may relieve a tenant from forfeiture of a lease if the tenant tenders all money owing under the lease." *Kaiser v. Rapley,* 380 A.2d 995, 997 (D.C.1977). Thus, if Mr. Chang tenders the money he owes to the landlord, "the proper procedure [will be] to stay execution of the judgment." *Trans–Lux, supra,* 54 A.2d at 148. Because of *Trans–Lux,* the court's entry of a judgment for possession does not establish that the landlord was the prevailing party in this litigation. Indeed, as this case illustrates, a tenant can prevail in part by obtaining a reduction in the amount due to the landlord, even though a judgment of possession may ultimately be entered in the landlord's favor.

The parties' all-or-nothing approach to the issue of attorneys' fees is, in any event, incompatible with our case law. "It is generally understood that the degree of success in litigation is a relevant factor in the award of attorneys' fees." *Fleming v. Carroll Publishing Co.,* 581 A.2d 1219, 1228 (D.C.1990) (citation omitted). Furthermore,

> [a] similar principle operates when a defendant's counterclaim reduces or eliminates a plaintiff's right to recovery. "In cases involving a counterclaim which operates to lessen, but not extinguish, the plaintiff's recovery, it has been held that the amount of attorneys' fees allowable under a contract provision should be commensurately reduced."

*Id.* (citation omitted). We concluded in *Fleming* that "[i]n such cases where a party is only partially successful, the trial court must exercise its discretion to determine what amount of fees, if any, should be awarded." *Id.* at 1229 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 436–437, 103 S.Ct. 1933,

1941, 76 L.Ed.2d 40 (1983)). Accordingly, we hold that the trial court did not abuse its discretion in awarding attorneys' fees to both parties.

The landlord also argues that the trial court erred in awarding $10,000 to Mr. Chang because he did not submit any documentation to substantiate his claim. *See, e.g., Martin v. Tate,* 492 A.2d 270, 274 (D.C. 1985) (reversing part of an award of attorneys' fees because it "was not supported by an adequate factual showing"). We need not decide this point because there is a more fundamental error in the court's calculation of Mr. Chang's attorneys' fees.

■■■■■ The trial court held that the contingent fee agreement between Mr. Chang and his attorney was not an appropriate measure of "reasonable" attorneys' fees.[10] This was error. In the District of Columbia, contingent fee agreements are entirely permissible as long as they meet certain requirements and are not invalid for any other reason.[11] There is no indication that the agreement between Mr. Chang and counsel runs afoul of any legal restriction on contingent fee agreements. The fact that it is contingent does not make it unreasonable, nor does it mean that the court could ignore the agreement in assessing the amount of attorneys' fees to be awarded. Since there appears to be no other reason to disregard the agreement in this case, we direct the trial court on remand to give it due consideration, as it would consider any non-contingent fee agreement, in calculating the amount due to Mr. Chang. There may, of course, be other factors that have a bearing on that amount; if there are, the court should consider them as well.

### IV

We affirm the trial court's rulings with

---

**10.** Under the contingent fee agreement between Mr. Chang and his counsel, Mr. Chang would pay one-third of the difference between the amount claimed by the landlord for taxes and electricity costs and one-third of any other recovery, plus costs. Mr. Chang agreed to pay forty percent if the case was appealed.

**11.** For example, a contingent fee agreement that is champertous is void as against public policy. *Marshall v. Bickel,* 445 A.2d 606, 609 (D.C.1982)

("What distinguishes a champertous fee agreement from a valid contingent fee contract ... is the existence of the third element of champerty— that the attorney maintain the lawsuit at his or her own expense, without expectation of reimbursement" (citation omitted)). Similarly, an otherwise valid contingent fee agreement that binds the client not to settle out of court would contravene public policy. *See Barnes v. Quigley,* 49 A.2d 467, 468 (D.C.1946).

respect to the charges for electricity [12] and the real property taxes. We also affirm the trial court's denial of Mr. Chang's motion for Rule 11 sanctions and its judgment for the landlord on Mr. Chang's counterclaim. We reverse the court's decision with respect to the gas bill and direct the court on remand to determine the exact amount due for gas used only by Mr. Eggroll. We affirm the trial court's decision to award attorneys' fees to both parties on the ground that each of them was, to some extent, a prevailing party. We affirm the award of $20,935.57 in attorneys' fees to the landlord. We reverse the award of $10,000 in attorneys' fees to Mr. Chang and remand the case so that the trial court may recalculate that award, after taking into consideration the contingent fee agreement as a possible measure of the amount due.

*Affirmed in part, reversed in part, and remanded.*

---

12. The record does not tell us whether the electrical usage study was ever conducted. If it was not, or if there is any unfinished business relating to the electric bill, we leave it to the parties and the trial court to resolve such matters on remand.