### ASSOCIATION OF AMERICAN RAILROADS, Appellant,

v.

### Robert J. CONNERTON, et al., Appellees.

### Nos. 95–CV–1236, 96–CV–130.

District of Columbia Court of Appeals.

Argued Sept. 1, 1998.

Decided Jan. 28, 1999.

---

Philip M. Musolino, with whom Lisa J. Dessel, Washington, DC, was on the brief, for appellant.

Elliot Adler, for appellees. Alexia Morrison and Adam M. Shayne, Washington, DC, filed the brief for appellees.

Before SCHWELB and FARRELL, Associate Judges, and KING, Senior Judge.*

SCHWELB, Associate Judge:

These appeals arise from a dispute between the Association of American Railroads (AAR), as sublessor, and Connerton, Ray, & Simon, a law firm (Connerton), as subtenant, over the construction of their Sublease. Following a bench trial, the trial judge ruled in Connerton's favor with respect to AAR's contention that Connerton was liable to AAR for a share of certain disputed operating expenses and real estate taxes. The judge also ordered AAR to pay Connerton $73,790 in counsel fees. On appeal, AAR contends that these rulings were erroneous as a matter of law. We affirm.

## I.

## THE PASS–THROUGHS

### A. *Background.*

The eight-story commercial building located at 1920 L Street N.W. in Washington, D.C. consists of office space on floors two through eight, retail space on the first floor, and a garage. On September 11, 1978, 20th & L Associates Limited Partnership, as landlord, leased all of the office space and most of the retail space to AAR pursuant to the terms of the "Master Lease." On January 21, 1987, AAR subleased approximately 12,000 square feet of office space on the fourth floor of the building to Connerton's predecessor-in-interest.

In 1994, after Connerton refused to pay some of the charges claimed by AAR to be due, AAR instituted an action for possession against Connerton in the Landlord and Tenant Branch of the Superior Court's Civil Division. AAR claimed that Connerton had failed to pay its full share of the rent due pursuant to the Sublease. Connerton counterclaimed for a refund of rent previously paid, asserting that AAR had attempted to charge Connerton amounts that were not authorized by the Sublease. On July 24, 1995, in a 27–page order (Order No. 1), the trial judge ruled in favor of AAR on some of the issues disputed by the parties and in Connerton's favor as to other issues. AAR has appealed from the trial judge's disposition of issues relating to the amount Connerton was required to pay as its share of the building's operating costs and real estate taxes. AAR also claims that the trial judge should have dismissed Connerton's counterclaim because, according to AAR, Connerton made the payments voluntarily and with full knowledge of the facts.

### B. *The Sublease.*

Under the terms of the Sublease, Connerton is required to pay a fixed monthly base rent and

> its proportionate share of all increases in operating costs (to the extent charged by the Lessor to the Sublessor under the terms of the Master Lease) above an index of $7.25 per resalable square foot, per year. This amount ($7.25 per rentable square foot, per year) will be considered the "Base Operating Costs." Sublessee's proportionate share of operating expenses will be based on the ratio of Sublessee's total square footage to the total square footage of the rentable office space in the building in accordance with Exhibit 1. Sublessee's proportionate share of real estate taxes to be included in operating costs shall be based on the ratio of sublessee's total square footage to the total rentable square footage in the building.

The Sublease further states that "[t]he term 'Operating Costs' shall be as defined in

* Judge King was an Associate Judge, Retired at the time of oral argument. His status changed to Senior Judge on November 23, 1998.

Section 34 of the Master Lease." Section 34 of the Master Lease provides, in pertinent part, that "Operating Costs shall mean . . . in general, all costs and expenses of operating the Building."

### C. *Electric bills and real estate taxes attributable to the garage.*

Relying on Section 34 of the Master Lease, quoted above, AAR contended in the trial court, and again argues on appeal, that Connerton's obligations in terms of electric bills and real estate taxes must be calculated as a proportionate share of the operating expenses of the entire building. According to AAR, Connerton was required to pay, *inter alia*, a share of the building's operating costs attributable to the electric bills and real estate taxes of the tenant of the garage.

■ The Sublease, however, obligates Connerton to pay its share of any increases in operating costs only *"to the extent charged by the Lessor to the Sublessor under the terms of the Master Lease."* David Barefoot, who negotiated the Sublease on behalf of AAR, conceded that AAR had no responsibility for paying the real estate taxes or electrical costs of the tenant of the garage. Although there was contrary testimony, the judge expressly credited Barefoot's admission, and her finding as to this factual issue was not "clearly erroneous." *See* Super. Ct. Civ. R. 52(a).

### D. *The retail tenant's electric bills.*

■ Section 4B of the Sublease states that Connerton's share of operating expenses was to be based on the ratio of Connerton's total square footage "to the total square footage of the *rentable office space* in the building." (Emphasis added.) Fred Ezra, who negotiated the Sublease on behalf of Connerton, testified that the intent of this provision was to charge Connerton for its share of the operating expenses incurred in the building's commercial space. The trial judge specifically found that this provision of the Sublease excluded the retail shops on the first floor as well as the garage, and that Connerton

therefore was not obliged to pay AAR any part of the electric costs of these entities. We agree, for, viewed in conjunction with the definition in the Sublease of Connerton's "proportional share" of operating expenses, the definition in the Master Lease of overall operating expenses may properly be read to exclude the electrical bills of the garage and the retail stores. The judge's construction of the Sublease, while perhaps not the only possible one, was a reasonable one. *See Chang v. Louis & Alexander, Inc.,* 645 A.2d 1110, 1115 (D.C.1994); *cf. New Places, Inc. v. Communications Workers of Am., Inc.,* 619 A.2d 73, 77 (D.C.1993).[1]

## II.

## WAIVER

■ In the trial court, AAR moved to dismiss Connerton's counterclaim on the grounds that Connerton's initial payment of the amounts demanded by AAR constituted a knowing waiver. AAR claimed that "monies voluntarily paid with full knowledge of the surrounding facts and circumstances, though paid under a mistaken view of the law, cannot be recovered." *Bedell v. Inver Hous., Inc.,* 506 A.2d 202, 206 (D.C.1986) (quoting *Voulgaris v. Press,* 116 A.2d 691, 692 (D.C. 1955)). The trial judge denied the motion, finding that the amounts had not been paid voluntarily or with full knowledge of the facts. The judge also found that in 1992, 1993 and 1994, AAR had refused to provide documentation to Connerton, as required by the Sublease.

The judge's finding was not clearly erroneous. Indeed, the record, when viewed, as it must be, in the light most favorable to Connerton, *see, e.g., Wright v. Hodges,* 681 A.2d 1102, 1105 (D.C.1996) (per curiam), supports Connerton's position that it initially paid the full rent under a mistake of fact, for Connerton believed that AAR was charging Connerton no more than AAR was authorized to pass through to its subtenant.

---

1. We conclude that the Subleases's incorporation of the broad definition of "operating expenses" in paragraph 34 of the Master Lease, when considered together with the "proportionate share" formula in the Sublease itself, renders the agreement sufficiently ambiguous to warrant the admission of extrinsic evidence. *Cf. Chang, supra.*

■ For more than a century, the courts of this jurisdiction have "follow[ed] the established rule that one who pays money to another under an honest mistake of fact may, in the absence of an equitable defense, recover the money so paid." *Lanston v. American Sec. & Trust Co.*, 32 A.2d 482, 483 (D.C.1943) (citing, *inter alia*, *Strauss v. Hensey*, 9 App. D.C. 541, 547–48 (1896)). "To [this] rule . . . there is no exception." *Prowinsky v. Second Nat'l Bank*, 49 App. D.C. 363, 364, 265 F. 1003, 1004 (1920).

■ These authorities are consistent with this court's recognition that "equity abhors forfeitures," *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 203 (D.C.1991); so, indeed, does the law. *See Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 367–68 (D.C. 1984). There is no evidence in this case of detrimental reliance by AAR on Connerton's initial payment of the disputed amounts, nor has AAR established any other equitable defense. "If there is any question[, in a case of money paid by the plaintiff under a mistake of fact,] whether it would be inequitable to require the defendant to refund, the burden of proving the fact rests upon him." *Hibbs v. Beall*, 41 App. D.C. 592, 598 (1914).

AAR contends that Connerton knew or should have known that AAR was passing through to Connerton the charges that Connerton is now challenging. AAR points to the judge's finding that in 1989, 1990 and 1991—years during which Connerton paid without protest the full rent demanded by AAR—Connerton had requested and received from AAR supporting documentation, consisting primarily of invoices. If Connerton had examined these documents, then, according to AAR, Connerton would have realized that AAR was passing through to Connerton the electric bills and real estate taxes attributable to the garage, as well as the electric bills attributable to the retail tenant. AAR thus argues that Connerton's claimed "mistake of fact" was self-created, and that

> [a] mistake which authorizes recovery exists only when the payor is unconscious of any error or ignorance, and not where he is conscious of a want of knowledge of the facts, or is uncertain or doubtful or speculates concerning them, or where they are disputed.

70 C.J.S. *Payment* § 115, at 99 (1987); *see also George J. Meyer Mfg. Co. v. Howard Brass & Copper Co.*, 246 Wis. 558, 18 N.W.2d 468, 474 (1945).

■ It is not readily apparent from the documents provided to Connerton by AAR prior to 1992 that a reasonable tenant could have readily detected the inclusion in the pass-through of the challenged charges. But even assuming, without deciding, that Connerton failed to exercise due care when it paid the full rent demanded by AAR, its negligence will not bar recovery where AAR has failed to establish any equitable defense. In *Strauss v. Hensey, supra*, the court, speaking through Mr. Chief Justice Alvey, explicated the controlling principle:

> The leading case upon the subject of the right to recover back money paid by mistake of fact, is that of *Kelly v. Solari*, 9 M. & W. 54. In that case the money had been paid by the plaintiff to the defendant under a *bona fide forgetfulness* of facts which disentitled the defendant to receive it, and it was held that the plaintiff could recover back the money in an action for money had and received. In the course of his opinion Mr. Baron Parke said, "I think that where money is paid to another under the influence of a mistake, that is, upon the supposition that a specific fact is true, which would entitle the other to the money, but which fact is untrue, and the money would not have been paid if it had been known to the payer that the fact was untrue, an action will lie to recover it back, and it is against conscience to retain it, though a demand may be necessary in those cases in which the party receiving may have been ignorant of the mistake." The other barons were of the same opinion.

9 App. D.C. at 547–48 (emphasis in original). *Strauss* thus stands for the proposition that, where no equitable defense has been established, "bona fide forgetfulness of facts"— *i.e.*, negligence—will not bar a plaintiff's recovery of sums paid out under a mistake of fact.

In *Smith v. Capital Bank & Trust Co.*, 325 Pa. 369, 191 A. 124 (1937), the defendants contended that the plaintiffs were not entitled to recover an overpayment because the plaintiffs were negligent in failing to discover the true facts. After articulating the rule that "[o]ne who by mistake of fact pays more than is due may recover the overpayment," *id.* at 125, the Supreme Court of Pennsylvania squarely rejected the defendants' argument:

> [I]t is immaterial whether the [plaintiff] was guilty of negligence or not. The circumstance that plaintiff had ready and ample means of information, which, if taken advantage of, would have avoided the wrong payment, was not sufficient to prevent recovery. Negligence in making a mistake does not deprive a party of his remedy on account thereof; it is the fact that one by mistake unintentionally pays money to another to which the latter is not entitled from the former, that gives the right of action.

*Id.* (citations and internal quotation marks omitted). Discerning no basis for an equitable defense of estoppel or laches, the court affirmed a judgment for the plaintiffs. *Id.* at 126. *Accord, Estergard, Eberhardt & Ackerman, Inc. v. Carragher*, 105 Ill.App.3d 816, 61 Ill.Dec. 588, 434 N.E.2d 1185, 1188 (4th Dist.1982) ("[m]oney paid under the impression of the truth of a fact which is untrue may be recovered back, however careless the party paying may have been in omitting to use due diligence to inquire into the facts"); RESTATEMENT OF RESTITUTION, § 59 (1937) ("[a] person who has conferred a benefit upon another by mistake is not precluded from maintaining an action for restitution by the fact that the mistake was due to his lack of care"); *but cf. id.* cmt. a ("where an innocent transferee has changed his position so that either he or the payer must suffer loss, the fact that the transferor has been neglectful in creating the situation is important in determining the allotment of the loss").

In sum, Connerton continued to make full payments when it was arguably on notice that it may have owed less than it was paying. The judge found that Connerton did not have full knowledge of all material facts. To be sure, there was evidence that, well before Connerton refused to pay the charges it now disputes, Connerton was suspicious that it might have been overcharged. Moreover, we cannot agree with Connerton's position that it acted under "duress," for there is no duress "where the party asserting the claim or making the demand must resort to the courts to enforce it." 70 C.J.S. *Payment* § 107, at 88 (footnotes omitted). But in the absence of a showing of detrimental reliance on the part of AAR, and given Connerton's uncertainty as to whether the rent charged was excessive, we do not believe that a forfeiture is warranted by Connerton's failure, before it was sure, to challenge the charges and to precipitate litigation. Although the issue is not entirely free from doubt, we conclude that the authorities in this jurisdiction and elsewhere do not support reversal upon grounds of waiver.

## III.

### COUNSEL FEES

In Order No. 1, the trial judge held, in conformity with a provision of the Sublease, that each party was entitled to an award of counsel fees in connection with the claims on which that party had prevailed. The judge ordered counsel for each party to submit itemized bills reflecting the work done as to each successful claim and the rate at which compensation was claimed.

In response to the court's direction, counsel for Connerton filed a submission in which counsel claimed to be entitled to $204,720.67 in counsel fees and $52,843 in expert witness fees, for a grand total of $257,563.67—an amount substantially in excess of a quarter of a million dollars. For its part, AAR made a claim for counsel fees in the amount of $103,343.84.

On November 7, 1995, in Order No. 2, the trial judge described herself as "chagrined" by what she viewed as the inadequate and insufficiently supported submissions by both parties. Rejecting the demands of each party as unwarranted and inflated, the judge awarded Connerton $73,790 in counsel fees and costs and $12,085 in expert witness fees, for a total of $85,875—approximately one-

third of the amount requested. She awarded AAR a total of $40,554—less than 40% of the amount prayed for by that party. In a lengthy footnote to her order, the judge described in some detail the basis upon which she had allowed or disallowed various items.

On appeal, AAR has not challenged the judge's award to AAR as insufficient, nor has AAR objected to the judge's award to Connerton of expert witness fees and costs. Rather, AAR has focused its attack entirely on the amount of counsel fees awarded to Connerton. In its brief, AAR initially stated that "the defendants' fee application should have been denied in its entirety." Following a discussion in the same brief of the pertinent case law, however, AAR claimed that "[o]n the basis of all applicable authority, therefore, any award to defendants of attorney's fees should not exceed or even approach $70,000." (Internal quotation marks omitted.) The trial judge's award to Connerton was $73,790—only $3,790 more than the figure volunteered by AAR in its brief. Much of AAR's argument in this court was devoted to the alleged excessiveness of Connerton's initial demand, with very little focus on the judge's far more modest order.[2]

 The determination whether an award of counsel fees is in an appropriate amount is a matter addressed to the trial court's sound discretion. *District of Columbia v. Jerry M.*, 580 A.2d 1270, 1280 (D.C. 1990). Such an award will be reversed only upon an "extremely strong showing ... that an award is so arbitrary as to constitute an abuse of discretion." *Bagley v. Foundation for the Preservation of Historic Georgetown*, 647 A.2d 1110, 1115 (D.C.1994) (citation and internal quotation marks omitted). "Moreover, a request for attorney's fees should not result in a second major litigation." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). In the present case, the judge could reasonably conclude that the documentation provid-

ed by Connerton's attorney, deficient as it may have been, was sufficient to support the drastically reduced award of $73,790.[3]

*Affirmed.*[4]

2. If the counsel fee award to AAR is subtracted from the counsel fee award to Connerton, we find a difference of $33,236.

3. Although Connerton's submission was not supported by affidavits of Connerton's attorneys, counsel's signatures on the pleadings rendered

them subject to the strictures of Super. Ct. Civ. R. 11. We note that a part of AAR's claim was also unsupported by affidavit.

4. We have considered AAR's remaining contentions and conclude that none requires reversal.