1230–1250 TWENTY–THIRD STREET
CONDOMINIUM UNIT OWNERS
ASSOCIATION, INC., Appellant,

v.

Richard A. BOLANDZ, Appellee.

No. 06–CV–838.

District of Columbia Court of Appeals.

Argued Sept. 11, 2007.
Decided Aug. 27, 2009.

Jeffrey M. Hamberger, with whom Benny L. Kass was on the brief, Washington, for appellant.

Christopher "Kip" Schwartz, with whom C. Dennis Southard IV was on the brief, Washington, for appellee.

Before RUIZ and THOMPSON, Associate Judges, and KING, Senior Judge.

RUIZ, Associate Judge:

Appellant, 1230–1250 Twenty Third Street Condominium Unit Owners Association, Inc. ("condominium association" or "association"), appeals the trial court's award of attorney's fees to appellee, Richard A. Bolandz. We disagree with the association's argument that the trial court erroneously interpreted a provision in the condominium bylaws allowing for attorney's fees, and that the amount awarded was unreasonable. We therefore affirm the grant of attorney's fees to Mr. Bolandz.

## I.

We briefly summarize the relevant facts and procedural history here, as they have already been discussed in detail in the court's opinion deciding the first appeal in this case. *See Bolandz v. 1230–1250 Twenty–Third Street Condo. Unit Owners Ass'n, Inc.*, 849 A.2d 1010 (D.C.2004) (*"Bolandz I"*). In August 1997, Mr. Bolandz built an enclosure around his balcony due to what he claimed was a structural defect in the building that resulted in water pooling in the balcony. In December 1997, the condominium association demanded that Mr. Bolandz remove the enclosure, claiming that it had been built in violation of various condominium rules that prohibit unit owners from making alterations to the building without prior approval from the association's Board of Directors. In August 1998, the association notified Mr. Bolandz that he was in violation of the condominium rules and imposed sanctions [1] until he removed the enclosure.

In February 1999, Mr. Bolandz filed a civil action in the Superior Court of the District of Columbia requesting, *inter alia,* a declaratory judgment that the balcony enclosure was reasonable and that the imposition of sanctions was unreasonable under the circumstances. The association, in response, filed a counterclaim, requesting that the court order Mr. Bolandz to remove the enclosure.[2]

---

1. The association fined Mr. Bolandz $5 per day that the enclosure remained in place and suspended his recreational facility privileges.

2. In paragraphs eight to eleven of its counterclaim, the association cited several rules and bylaws that it claimed Mr. Bolandz had violated:

   8. Both the Condominium By–Laws and its rules and regulations states that "nothing shall be altered or constructed in or removed from the common elements except with the prior written consent of the Board of Directors...."

   9. The Condominium's rules and regulations state: "Nothing shall be done in any unit or on the common elements which may impair the structural integrity of the building or which may structurally change the building nor shall anything be altered or constructed on or removed from the common elements, except upon the prior written consent of the Board of Directors."

   10. The rules and regulations of the Condominium further state that: "No patio or balcony shall be enclosed or covered by a unit owner without the prior written consent of the Board of Directors."

   11. Policy Resolution No. 6 of the Condominium further states that: "No exterior alteration or addition may be made without

After trial, the court determined that "it was reasonable . . . [for Mr. Bolandz,] given the inaction of this Board, to take effective measures to remedy the ponding problem but not without the prior approval of [the association]," and that it was also reasonable for the association to have imposed sanctions. The court ruled in favor of the association in finding that Mr. Bolandz violated the condominium rules by enclosing the balcony without the association's permission. The court found, however, that the association was "estopped" from seeking the removal of the enclosure in this proceeding. The court concluded that no further sanctions could be imposed, and that the enclosure could remain, until the association held a "fair" meeting to decide whether to approve the enclosure, and answered specific questions posed by the court concerning the impact of the balcony enclosure on the aesthetics, structure and insurance of the building.

The association reported to the court after the meeting that it maintained its original position that the enclosure should be removed. The court was reluctant to endorse the association's decision, but found that the hearing had been fair to Mr. Bolandz. Because the court was of the opinion that it "may not substitute its judgment for that of the Board," it ruled that the association "could" remove the enclosure at its own expense. *Bolandz I,* 849 A.2d at 1013–14. Mr. Bolandz appealed, and this court in *Bolandz I* remanded the case, holding that the trial court must independently assess the reasonableness of the association's decision. *Id.* at 1014–15. On remand, the court vacated its earlier ruling and prohibited the association from removing the enclosure and imposing sanctions.

After having prevailed in his quest to keep the balcony enclosure, Mr. Bolandz filed a motion for attorney's fees pursuant to condominium bylaw § 9.1(b), which provides that "[i]n any proceeding arising out of any alleged default by a unit owner, the prevailing party shall be entitled to recover the costs of such proceedings and such reasonable attorney's fees as may be determined by the court." Mr. Bolandz's motion requested $161,573.50 in attorney's fees and attached the invoices submitted by his lawyers. The association opposed the request, arguing that the bylaw was inapplicable to fees related to the lawsuit that had been initiated by Mr. Bolandz, and that the amount requested was unreasonable given that the lawsuit was over a balcony enclosure that cost approximately $20,000.

On August 24, 2005, the court issued an order interpreting the bylaw provision as entitling Mr. Bolandz to recover attorney's fees. The court explained that the request for declaratory judgment in Mr. Bolandz's complaint "did arise out of an alleged default by a unit owner." Supporting this conclusion was the court's finding that the same evidence that supported Mr. Bolandz's request for declaratory judgment had also been used by the association in its counterclaim that Mr. Bolandz had breached the condominium rules.

On December 8, 2005, after having reviewed the parties' supplemental pleadings on the amount of the fee request, the court made a slight downward adjustment to the fee request, and awarded attorney's fees in the amount of $157,119 to Mr. Bolandz. The condominium association noted this appeal.

prior application to and approval of the Covenant's Committee or the Board of Directors, except as noted in this resolution."

## II.

■■ A condominium instrument, such as the bylaws, is a contract between the unit owners and the condominium association. *See, e.g., Lacy v. Sutton Place Condo. Ass'n,* 684 A.2d 390, 393 (D.C.1996). We review the trial court's interpretation of a contract *de novo. See Washington Auto. Co. v. 1828 L St. Assocs.,* 906 A.2d 869, 874 (D.C.2006).

■ It is a canon of contract interpretation that "where language has a generally prevailing meaning, it is interpreted in accordance with that meaning." RESTATEMENT (SECOND) OF CONTRACTS § 202(3)(a) (1981). And "where a contract is unambiguous ... a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence." *Nat'l Ass'n of Postmasters of the United States v. Hyatt Regency Washington,* 894 A.2d 471, 474 (D.C.2006) (quoting *Holland v. Hannan,* 456 A.2d 807, 815 (D.C.1983)).

■ The condominium association contends that the trial court erroneously interpreted bylaw § 9.1(b) as requiring the award of attorney's fees to Mr. Bolandz. The association argues that Mr. Bolandz's filing and prosecution of the request for declaratory relief does not come within the purview of the bylaw because it did not arise out of his default. Instead, the association claims, Mr. Bolandz went to court in response to the association's actions (demanding removal of the balcony enclosure and imposing sanctions), and not as a result of Mr. Bolandz's own default.

We disagree with the association's assertion that Mr. Bolandz cannot avail himself of the bylaw's provision for attorney's fees in this case. The plain reading of the phrase, "any proceeding arising out of any alleged default by the unit owner," does not exclude Mr. Bolandz's complaint against the association. The dictionary defines "arise" to mean "to originate from a specified source ... to come into being ... to become operative ... in such a way as to attract attention." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 117 (1971). In cases where we have interpreted the phrase "arise from" in statutes, we have said that " '[a]rise from' may well connote a causal relation less direct and immediate than, say, 'result from'...." *District of Columbia v. Beretta, U.S.A., Corp.,* 872 A.2d 633, 652 (D.C.2005).

> [S]tatutory language employing the phrase "arising from" is broad, and thus effects a "broad, general, and comprehensive" coverage. It has been held to suffice, where a claim is said to "arise from" some predicate, that there be a "substantial connection" or nexus between the predicate and the claim. Direct causation is not required; it is enough that the claim would not have arisen but for the presence of the asserted predicate.

*District of Columbia Ins. Guar. Ass'n v. Algernon Blair, Inc.,* 565 A.2d 564, 568 (D.C.1989) (citations omitted).

Mr. Bolandz's complaint came into being because he enclosed his balcony without the association's permission, an action which—the association asserted—was in violation of the condominium rules. The association then imposed sanctions until Mr. Bolandz cured his default by removing the enclosure. Mr. Bolandz's request for declaratory relief was in response to the association's demand to remove the balcony enclosure and imposition of sanctions; the claim would not have had a factual foundation had the association not determined in the first instance that Mr. Bolandz had defaulted on his obligation to the association, and sanctioned him for enclosing his balcony without the association's permission. We are confident that, at a minimum, Mr. Bolandz's claim had "a substantial connection" to the default the association claimed and the trial court upheld. *Id.*

Appellant's reliance on *Ochs v. L'Enfant Trust & West End Condo. Ass'n,* 504 A.2d 1110 (D.C.1986), is misplaced. In *Ochs,* the condominium association sought attorney's fees under a bylaw identical to the one at issue in this appeal. In that case, the association had granted a "conservation easement" to a non-profit foundation, and made a special assessment on the unit owners to pay for the transfer of the easement. Ochs opposed the easement, refused to pay the assessment, and filed a "Complaint to Quiet Title and Damages for Trespass," against the condominium association. The association responded by filing a counterclaim for damages for Ochs's failure to pay the special assessment.

The trial court dismissed Ochs's complaint, but the association's counterclaim went to trial. After the association prevailed at trial, the court awarded attorney's fees for the entire litigation: both for defending against Ochs's complaint and for bringing its own counterclaim. On appeal, we held that the trial court abused its discretion in its award of attorney's fees, because although "the two causes— [Ochs's] claim and the Association's counterclaim—are undoubtedly related, we cannot say that the initial proceeding arose from any default by [Ochs]." 504 A.2d at 1119.[3] We held that the association could recover for its suit against Ochs claiming that he had defaulted by failing to pay the special assessment, but that it could not recover attorney's fees related to defending against Ochs's complaint because it did not arise from the unit owner's default.

Ochs's complaint, we said, was in response to the association's grant of the conservation easement, and sought a declaration invalidating the easement and damages, an action that was unrelated to his failure to pay the special assessment. *Id.; see also Cohan v. Riverside Park Place Condo. Ass'n, Inc.,* 123 Mich.App. 743, 333 N.W.2d 574, 577 (Mich.1983) (trial court erred in awarding attorney's fees to the association after prevailing in lawsuit brought by a unit owner, which alleged that the association was unreasonable in denying his request to enclose his balcony, since the lawsuit arose from the association's denial of the owner's request, which was not followed by an alleged default). Here, on the other hand, Mr. Bolandz's action was triggered by the association's demand that he remove the enclosure and the imposition of sanctions, both of which were premised on Mr. Bolandz having breached the condominium's rules.[4]

### III.

■ We also disagree with the association's argument that the attorney's fee award was unreasonable. "This court generally defers to the broad discretion of the trial judge in the calculation and award of attorney's fees." *Pellerin,* 900 A.2d at 690 (quoting *District of Columbia v. Hunt,* 520 A.2d 300, 304 (D.C.1987)). "Therefore, it requires a very strong showing of abuse of discretion to set aside the decision of the trial court [regarding the awarding of attorney's fees]." *Id.* (quoting *Maybin v. Stewart,* 885 A.2d 284, 288 (D.C.2005)).

---

3. In *Ochs,* the court did not attempt to define the meaning of "arising out of any alleged default by a unit owner," other than to say that the association's defense of the complaint Ochs filed, for which the association sought to recover attorney's fees, did not arise from the default of the unit owner in that case.

4. As we noted in *Ochs,* "the result reached here on the attorney fees issue could have

been avoided by the Association had it more providently worded the pertinent provision of the condominium instruments." *Ochs,* 504 A.2d at 1119 n. 9; *cf. Pellerin v.1915 16th St., N.W., Coop. Ass'n, Inc.,* 900 A.2d 683, 685 (D.C.2006) (condo association sought attorney's fees pursuant to a section that *specifically* allowed recovery *only* by the association when it filed an action against the unit owner for default).

Upon reviewing the trial court's orders and the relevant pleadings submitted by the parties, we conclude that the trial court did not abuse its discretion.

■ In his motion for attorney's fees, Mr. Bolandz outlined the fees by the stages in the proceeding (pretrial, trial, appeal, and remand), and included references to the corresponding invoices (totaling nearly 200 pages). Although Mr. Bolandz's motion requested a sum certain, the trial court declined awarding any fees until it was satisfied that the amount requested was reasonable.

In its initial order, the trial court found that while the request for declaratory relief—Count II of Mr. Bolandz's complaint—arose from his default, the remaining counts in his complaint did not.[5] In response to the court's order, Mr. Bolandz identified the fees that related only to Count II, and the fee arrangement with his counsel. The court also invited both parties to submit further pleadings to inform the court in making its final ruling.

After reviewing the parties' supplemental pleadings, the trial court found that "[n]either party made representations to the Court about the prevailing market rate for hourly fees, thus the Court will presume that [the] rate [requested by Mr. Bolandz] was reasonable...."[6] The trial court, however, decreased the award by $8,000, which Mr. Bolandz claimed to have been for preparation of a supplemental memorandum in support of his motion for the award of attorney's fees and costs. The trial court determined that the supplemental memorandum should have been provided to the court with the original motion, and excluded the related fees from the fee award. As the association failed to bring any specific challenges to the reasonableness of the fees requested,[7] we decline to "disturb [the] judgment where [the] trial court articulates reasons for [the] fee award."[8] *Ginberg v. Tauber*, 678 A.2d 543, 552 (D.C.1996).

*Affirmed.*

---

5. Mr. Bolandz's complaint included other claims in addition to the request for declaratory judgment: Count I sought injunctive relief against the association to repair the balcony; Count III claimed breach of fiduciary duty against the members of the association's Board of Directors for their failure to repair the balcony; Count IV alleged breach of contract against the association for its failure to repair the balcony; and Count V alleged breach of contract against the association and the Board members for their failure to enforce the builder's warranty to repair the balcony.

6. In his filing, Mr. Bolandz stated that the fee arrangement was for billing on an hourly basis. According to the record, the hourly rate for Mr. Bolandz's counsel varied throughout the years of litigation. From 1998 to 2004, the hourly billing rate was $260. From 2004 to 2005, the hourly rate was $375 for the more senior counsel, and

$285 for junior counsel. From 2005 and thereafter, the hourly rate was $425 for the more senior counsel, and $330 for junior counsel.

7. The association did point out that there was an "unexplained inclusion" of invoices from another law firm. Mr. Bolandz explained to the trial court that this law firm was involved in pursuing a claim against a Board member (which was not part of Count II), and withdrew those fees from his fee request.

8. In *Chang v. Louis & Alexander, Inc.*, 645 A.2d 1110 (D.C.1994), we held that when both parties partially prevailed in a lawsuit, the trial court did not abuse its discretion in awarding attorney's fees to both parties in accordance to the contract that allowed attorney's fees to the prevailing party. This, in *Chang*, resulted in reducing the greater award by the lesser. *Id.* at 1115. Here, the association did not request attorney's fees that could

have triggered an offset similar to the one in *Chang.* Counsel for the association stated at oral argument that he chose not to seek attorney's fees because the association prevailed on only one claim (that Mr. Bolandz violated the condominium rules), for which the court awarded a nominal $100 in damages.