**Richard A. BOLANDZ, Appellant,**

v.

**1230–1250 TWENTY–THIRD STREET CONDOMINIUM UNIT OWNERS ASSOCIATION, INC., Appellee.**

No. 01–CV–1225.

District of Columbia Court of Appeals.

Argued Sept. 16, 2002.
Decided May 20, 2004.

Christopher Schwartz, with whom C. Dennis Southard IV was on the brief, Washington, for appellant.

Derick P. Berlage, with whom Benny L. Kass was on the brief, Washington, for appellee.

Before SCHWELB, FARRELL and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge.

The board of directors of a condominium association directed a unit owner to re-

move an enclosure he had installed on his balcony without the board's permission. The unit owner sued the association to overturn the board's decision. The trial court eventually held that it had to defer to the board. We vacate the court's order and remand for the court to determine whether the board's directive was a reasonable one under the circumstances.

## I.

Appellant Richard A. Bolandz is the owner of Unit 908 in a condominium building located at 1230–1250 Twenty–Third Street, N.W. The building is governed by appellee, the Unit Owners Association, through its Board of Directors. From 1990 when Bolandz purchased Unit 908 until 1997, he experienced a persistent "water ponding" problem on the unit's open-air balcony that was due to defective grading and the consequent inefficient drainage of rain water. The accumulation of standing water interfered with Bolandz's use of the balcony and led to moisture damage in the interior of the unit. On two occasions Bolandz had to replace carpet, wallboards, and baseboards as a consequence of water seepage.

When he purchased Unit 908 Bolandz identified the balcony drainage problem as a defect that needed to be remedied, and over the years he repeatedly but futilely complained about it to building management and to appellee's Board of Directors. In August 1997, with the problem still not remedied, Bolandz undertook to rectify it himself by installing windowed French doors to enclose the balcony at a cost of over twenty thousand dollars. The windows were designed to fall safely inward if they became detached and to be aesthetically consistent with the overall appearance of the building even though no other balconies were enclosed.[1]

Bolandz enclosed the balcony appurtenant to his unit without requesting or obtaining the approval of appellee's Board of Directors or its Covenants Committee as was required by Association By-laws and Rules and Regulations.[2] In August 1998 the Board of Directors, after holding a hearing on the unauthorized construction, decided to require Bolandz to remove it. To enforce its decision, the Board assessed a fine against Bolandz of five dollars a day (retroactive to December 1997) and banned him from the building's recreation facilities until he took down the French doors.

Bolandz responded to the Board's decision by suing the Association in Superior Court for breach of contract and breach of fiduciary duty. His complaint requested declaratory and injunctive relief and damages for the Association's failure to repair his balcony. The Association counterclaimed, seeking not only an injunction and damages but also a judicial foreclosure of Bolandz's condominium unit to enforce the sanctions that the Board of Directors had imposed.

The case was tried to the court. The court ruled that the Association and its Board of Directors had breached a con-

---

1. The balcony to Unit 908 is on the back of the building. It overlooks an alley and faces an adjacent office building. Because the intervening space is so narrow, it apparently is difficult if not impossible for an observer on ground level to see the balcony enclosure.

2. By-law No. 5.8(a)(4) states that "[n]othing shall be altered or constructed in ... the common elements [including balconies] ex-

cept with the prior written consent [of] the Board of Directors or the Covenants Committee, as appropriate." Additionally, Section 18 of the Rules and Regulations more specifically provides that "[n]o patio or balcony shall be enclosed or covered by a unit owner without the prior written consent of the Board of Directors."

tractual duty to correct the water ponding problem on Bolandz's balcony and awarded Bolandz damages—$1,800 for the cost of repairing water damage inside his unit and $7,000 for loss of enjoyment of the unit. The court further ruled that though "it was reasonable for this Plaintiff, given the inaction of this Board, to take effective measures to remedy the ponding problem" himself, Bolandz nonetheless had breached his contractual duty to obtain Board approval before he resorted to self-help and installed the doors enclosing his balcony. The court awarded the Association nominal damages of $100 for Bolandz's breach.

Next, the court ruled that while the Board had a right to take reasonable actions to enforce Association rules and regulate the internal affairs of the condominium, the Board breached its fiduciary duty to Bolandz by imposing sanctions on him without giving him a fair hearing. The court found the hearing unfair because the Board had failed to consider Bolandz's reasons for installing the French doors on his balcony or whether the installation was aesthetically consistent with the appearance of the building, impaired the structural integrity of the building, or increased the Association's exposure to liability. Rather, the court said, "the Board's primary—if not only—concern was whether [Bolandz's] actions in enclosing his balcony would encourage other owners to request permission to make modifications to their balconies." Although this was not an improper concern, the court stated that "it was not entitled to the weight given it by the Board" to the exclusion of the other "very important issues that reasonably should have affected its decision on sanctions."

As damages for the Board's breach of its fiduciary duty, the court awarded Bolandz $5,000. The court further ordered that Bolandz could keep the doors enclosing his balcony without penalty until the Board provided him a fair hearing and made specific findings on the relevant factors. Those factors, the court stated, included: (1) whether the presence of the windowed doors increased the Association's insurance liability; (2) whether any increased liability could be remedied by Bolandz's agreement to hold the Association harmless for any damage that the windows might cause; (3) whether the doors impaired the structural integrity of the building; (4) whether other unit owners had requested permission from the Board to enclose their balconies; (5) whether the doors affected "the aesthetics of the building"; (6) whether leaving the balcony enclosure in place would affect the interests of unit owners; (7) whether the enclosure adversely affected property values at the building ("especially in light of the fact that the windows here are located on the rear of the building"); and (8) whether other unit owners had complained about Bolandz's balcony enclosure. The court retained jurisdiction and reserved ruling on Bolandz's request for injunctive relief pending the outcome of a new hearing before the Board.

To comply with the court's order, the Board of Directors held another hearing at which it received expert testimony from Bolandz's architect and from its own retained professional engineer in addition to lay testimony. At the conclusion of the hearing, the Board adhered to its previous decision to require Bolandz to remove the doors enclosing his balcony, though it also decided to regrade the balcony floor at Association expense to correct the ponding problem. The Board informed the trial court of its decision in a written report that addressed each of the criteria the court had identified. In support of its decision, the Board cited the risk that the windows could fall out and injure persons

or property,[3] the consequent exposure of the Association to liability,[4] the inconsistency of allowing one unit owner to enclose his balcony when other owners could not do so,[5] and the possibility of a negative impact on property values.[6] Ultimately, the Board stated, it based its disapproval of Bolandz's balcony enclosure "on the impossibility of crafting a policy for balcony enclosures that is rational and fair to all unit owners, together with the Board's concern over liability and injury."

Bolandz asked the trial court to reject the Board's report and determination. He contended that "the Board's stated concerns and conclusions are wholly unsupported by and inconsistent with the evidence presented for the Board's consideration"[7] and that the Board therefore had failed, as before, to give him a fair hearing and make a decision that passed the test of reasonableness.

After receiving the Board's report and the submissions of the parties and after hearing argument, the trial court entered the order that is the subject of this appeal. In that order the court appeared to agree with the substance of Bolandz's criticisms, but the court nonetheless upheld the Board and ruled that the Association could—at its own expense and only after properly regrading the balcony floor—remove the windowed enclosures from the balcony of Bolandz's unit. In explanation of its ruling, the court noted that the Board's initial decision was flawed because it was "driven almost exclusively by the concern of the Board that allowing the window enclosures to remain might encourage other owners to make modifications to their balconies." Reviewing the new hearing that the Board conducted, at which the Board was to have considered additional factors, the court discerned to its evident dismay that "there [still] appears little in the information that was presented to the Board—other than a desire for uniformity among the unit balconies and the Board's desire to discourage requests for modification—to support the Board's decision." The court again was "of the view that the Board has placed undue weight on these factors." This time, however, despite its misgivings, the court reasoned that "the hearing was

3. While the Board pronounced itself persuaded that the windows "are not at risk of falling off the building," it concluded that Bolandz "has not established the complete absence of any risk" that "the window panes could detach in strong wind conditions."

4. A danger that, the Board said, was "mitigate[d] but ... not eliminate[d]" by Bolandz's offer to indemnify the Association.

5. The Board found that the doors were designed to blend in with the building facade "as much as possible" but still were not "aesthetically consistent with the facade" because other balconies are not enclosed. The Board was concerned, moreover, that "the problem of inconsistent balcony treatments" would be exacerbated if other unit owners sought to alter their balconies. "[O]nce any enclosure is permitted," the Board feared, "it will be difficult to fairly refuse any other applicant."

6. "The Board is concerned that inconsistent balcony treatments could affect the aesthetics and therefore the value of the entire Condominium property."

7. More specifically, Bolandz argued that the evidence before the Board "clearly established that the balcony windows are as safe and secure as any set of windows can be made to be, that they do not impair the building's structure, are aesthetically consistent with the exterior appearance of the rest of the building, have not caused an increase in the Association's insurance liability, have had no negative impact on the value of the building or of any other unit (if anything, they have increased the values), and that no unit owners have complained about the enclosure."

fair;"[8] the Board's decision fell within the authority conferred by a valid By-law, No. 5.8(a)(4) (quoted in footnote 2, *supra*); "and the Court cannot say that it [i.e., the By-law] bears no reasonable relationship to the health, happiness, and enjoyment of the unit owners"—even, the court added, if the benefits were "*de minimis*" in this case. "Accordingly," the court concluded, citing *Johnson v. Hobson,* 505 A.2d 1313 (D.C.1986), it "may not substitute its judgment for that of the Board."

Bolandz appealed the court's order to this court.

## II.

Bolandz's principal contention on appeal, and the only one we need to address, is that by failing to rule on whether the decision of the Board of Directors was substantively reasonable, the trial court misapplied the standard of judicial review of condominium board decisions set forth in *Johnson, supra.* Given the court's findings that the Board had little support for its decision and placed "undue weight" on its preference for uniformity, Bolandz argues that the court should have held the Board's decision unreasonable and invalid instead of ruling that it could not substitute its judgment for that of the Board. Bolandz accordingly asks us to set aside the Board's decision or instruct the trial court to do so on remand.

The Association argues that the trial court applied the *Johnson* standard of review properly. According to the Association, the evidence before the Board supported its decision, and the court correctly found that decision to be reasonable and entitled to judicial deference. The Association asks us to affirm the trial court's judgment.[9]

 We agree with Bolandz's contention—in part. We conclude that we must remand this case for the trial court to decide squarely whether the Board's decision was a substantively reasonable one or not.

 The trial court in this case recognized, and both parties to this appeal agree, that under this court's precedent, the Board's decision must pass the test of reasonableness. Our law in this area was elaborated upon in *Johnson, supra.* As we stated in that case, "[w]hile the governing body of a condominium has broad authority to regulate the internal affairs of the development, this power is not without limit." 505 A.2d at 1317. We held that courts have equitable power to review the regulatory actions of condominium boards under a standard of "reasonableness." *Id.* In so holding, we specifically "decline[d] to adopt" the comparatively deferential "business judgment rule" as a guide for reviewing decisions of condominium boards.[10] *Id.* at 1317 n. 7. The reasonableness standard is not overly restrictive in its application;

---

**8.** We understand this statement to mean that the hearing was *procedurally* fair to Bolandz, a determination that he does not contest in this appeal.

**9.** The Association does not challenge the trial court's factual findings or its award of damages to Bolandz for the Association's breach of contract and breach of fiduciary duty.

**10.** There are various formulations of the business judgment rule. "In practical terms, the business judgment rule means that 'directors' decisions will be respected by courts unless the directors are interested or lack independence relative to the decision, do not act in good faith, act in a manner that cannot be attributed to a rational business purpose or reach their decision by a grossly negligent process that includes the failure to consider all material facts available.'" *Willens v. 2720 Wisconsin Ave. Coop. Ass'n, Inc.,* 844 A.2d 1126, 1137 (2004) (quoting *Brehm v. Eisner,* 746 A.2d 244, 264 n. 66 (Del.2000)).

a decision is not unreasonable simply because a judge happens to disagree with it. Nonetheless, we explained in some detail in *Johnson* that in evaluating reasonableness, a court may have to undertake a potentially wide-ranging, fact-intensive inquiry into "both substantive and procedural aspects" of a decision. *Id.* at 1317. "[E]ach case must be considered on the peculiar facts and circumstances thereto appertaining." *Id.* (citation omitted). Ultimately, "if a rule is reasonable the association can adopt it; if not, it cannot." *Id.* (citation omitted).

In the present case, the trial court certainly expressed its doubts about the reasonableness of the Board's decision to disapprove the enclosure of Bolandz's balcony. The court did not, however, make an unequivocal determination that the Board's decision was an unreasonable one. By the same token, the court did not find unambiguously that the Board's decision was reasonable, either. At most, the court declared itself unable to conclude that By-law No. 5.8(a)(4) bore "no reasonable relationship" to the health, happiness and enjoyment of the unit owners (though it viewed the benefits in the current context as *"de minimis"*). We think it too problematic to construe that double-negative statement as an endorsement of the reasonableness of the Board's decision—especially since the reasonableness of the by-law is really not the issue, inasmuch as the by-law allowed the Board unfettered discretion to approve Bolandz's enclosure of his balcony.

For our part, we cannot usurp the trial court's role and decide the reasonableness question ourselves. The question is too fact-dependent, and we are not fact find-ers. The record before us is incomplete in any event—it does not include, for example, all the evidence and information that the Board and the trial court considered. We do not make light of the particular concerns that motivated the Board, and perhaps those concerns do suffice to support the reasonableness of the Board's action. We are not prepared to reach that conclusion as a matter of law, however, when we do not have the benefit of a complete record and the trial court's weighing of all the facts.

We therefore vacate the trial court's order upholding the Board's decision and remand this case for further proceedings consistent with our opinion.[11]

*So ordered.*

---

11. In view of this disposition, we do not reach Bolandz's alternative argument that, if his enclosure is to be removed, the Association must reimburse him for the costs he incurred to install it, or his argument that he is entitled to an award of costs and attorney's fees as a prevailing party.