*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-CV-0798

UNIT OWNERS ASSOCIATION OF 2337 CHAMPLAIN STREET CONDOMINIUM, DONALD P. MULLIKIN, PEDRO COLI, SHARON CAO, LUIS E. LUY, and VIANKA LUY, APPELLANTS,

V.

2337 CHAMPLAIN STREET, LLC, CAPITAL CITY REAL ESTATE, LLC, and UNIT OWNERS ASSOCIATION OF THE ERIE CONDOMINIUM, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2018-CA-006063-B)

(Hon. Fern Flanagan Saddler, Trial Judge)

(Argued December 14, 2022               Decided May 9, 2024)

*Louise T. Gitcheva*, with whom *Mariam W. Tadros* was on the brief, for appellants.

*Russell S. Drazin*, with whom *Jason A. Pardo* was on the brief, for appellees 2337 Champlain Street, LLC, and Capital City Real Estate, LLC.

*Thomas C. Mugavero*, with whom *Rafiq R. Gharbi* was on the brief, for appellee Unit Owners Association of the Erie Condominium.

Before BECKWITH and EASTERLY, *Associate Judges*, and GLICKMAN,[*] *Senior Judge*.

---

[*] Judge Glickman was an Associate Judge of the court at the time of argument. He began his service as a Senior Judge on December 21, 2022.

GLICKMAN, *Senior Judge*: This appeal is from the Superior Court's grant of summary judgment in a lawsuit brought by a condominium unit owners association and certain of its members against the developers of the condominium and the unit owners association of a neighboring condominium building. The plaintiffs charged that the developers violated statutory disclosure requirements and committed fraud by failing to inform them, when they purchased their units, of amendments to the condominium bylaws that imposed restrictions on them for the benefit of the neighbors; and they sought a declaratory judgment that the bylaw amendments were void as a matter of law. The Superior Court awarded summary judgment to the defendants. We affirm.

## I.

### A. Factual Background

In 2011, an entity named FCP Champlain, LLC ("FCP") purchased land in Northwest Washington, D.C., to develop the condominium building that is now known by its street address as the 2337 Champlain Street Condominium (hereinafter referred to as the Champlain Condominium or "the Champlain").[1] FCP applied to the District of Columbia Board of Zoning Adjustment ("BZA") for a special

---

[1] The building was previously called the "Morgan Condominium."

exception allowing the future building to exceed as-of-right height limitations and a variance to increase its permitted floor area ratio. The BZA granted the application on July 26, 2012, but the unit owners association of the building adjacent to the property, known as the Erie Condominium, appealed the BZA's order. This appeal was settled by agreement of the parties on January 22, 2013. As part of the settlement, FCP agreed to protect the view from the Erie Condominium by requiring future residents of the Champlain to maintain a green screen of plants on its roof and precluding them from placing certain items on the rooftop terraces and from adding structures on the roof above a certain height. Thereafter, in November 2013, FCP sold the Champlain to appellee 2337 Champlain Street, LLC ("2337 LLC"). The managing member of 2337 LLC is appellee Capital City Real Estate, LLC ("CCRE"). 2337 LLC and CCRE undertook to develop the Champlain Condominium, and we refer to them collectively in this opinion as the "Developers."

The rooftop restrictions to which the parties agreed in the 2013 settlement agreement were incorporated in the bylaws for the Champlain Condominium that the Developers adopted on January 31, 2015, and recorded on May 26, 2016, prior to the sale of any condominium units. The relevant provisions of those bylaws stated the following:

> 7.7.1 . . . (4) The [Champlain Unit Owners'] Association
> shall maintain the green screen of planted material on the

north façade of the mechanical penthouse as part of its duties to maintain common areas. This provision is for the benefit of Erie Condominium Association located at 2351 Champlain Street. N.W., Washington, D.C. [sic[2]] without its express written consent. . . .

9.18 Provisions to Benefit Erie Condominium Association located at 2351 Champlain Street, N.W., Washington, D.C. ("Erie Association"). The following restrictions on the use of the Condominium property are for the benefit of the Erie Association and may not be modified in any manner without the express written consent of the Erie Association:

(a) Neither the Association nor any Unit Owner shall place a partition, screen or other improvements within the roof terrace area used exclusively by the four Unit Owners with appurtenant roof terraces fronting on Champlain Street designated at RC3, RC4, RC5, and RC6;

(b) Neither the Association nor any Unit Owner shall undertake any alteration or addition to the mechanical penthouses, rooftop structures, railing and equipment on top of the Condominium that would be situated closer than twenty (20) feet from the northern lot line of the property; and

(c) Neither the Association nor any Unit Owner shall construct or install railings surrounding the roof terrace areas that exceed three (3) feet in height, or the minimum height required by any governing building code, whichever is greater.

---

[2] It appears that words such as "and may not be modified in any manner" were omitted inadvertently before the word "without" in § 7.7.1(4), as shown by the inclusion of those words in § 9.18.

Thus, the bylaws clearly provided that the future Champlain Unit Owners and their Association would be prohibited from altering these provisions without the consent of the Unit Owners Association of the Erie Condominium (hereinafter the "Erie Condominium Association" or "Erie").

CCRE proceeded to develop the Champlain into a forty-unit residential condominium building with six rooftop cabanas. Disputes then arose between the Developers and Erie as to whether the development was complying with the restrictions of the settlement agreement, and in particular whether the Developers improperly increased the height of the penthouse structures and rooftop cabanas beyond what the BZA had approved. In October and November 2015, Erie filed an appeal with the BZA challenging the issuance of building permits to the Developers, and a lawsuit in Superior Court alleging that the Developers were breaching the settlement agreement.

The BZA dismissed Erie's appeal as untimely, but a second settlement agreement was reached to resolve the claims brought in Superior Court. This second settlement agreement was entered into by 2337 LLC, CCRE, the Erie Condominium Association, and several Erie unit owners on June 17, 2016, and it superseded the earlier settlement agreement. In exchange for the dismissal of the Erie lawsuit with prejudice and Erie's agreement to allow the Developers to repaint the exterior south

wall of the Erie Condominium building (to make it more attractive to future residents of the Champlain), the Developers agreed not to increase the height of the Champlain and to additional restrictions on the rooftop's structures, improvements, and use so as not to "further obstruct views from Erie Condominium." These restrictions applied mostly to the six rooftop cabanas, which the parties to the settlement agreed could be sold as "limited common elements" for the exclusive use of specific units so long as "no more than six (6) units shall be provided with the right to use and occupy the rooftop[.]" The second settlement agreement resulted in design changes to Cabanas #1, #2, #3, and #6.

As part of the settlement, the Developers agreed to amend the Champlain Condominium's bylaws to include the additional restrictions. Accordingly, on August 9, 2016, the bylaws were amended "by the Declarant of 2337 Champlain Street Condominium[,] . . . as it is the sole owner of all units in the Condominium." (No units had been sold up to that point.) The amendments deleted Sections 7.7.1(4) and 9.18 of the prior bylaws in their entirety, and replaced them with the following provisions:

> 7.7.1 . . . (4) The Association shall maintain the "green screen" of planted material on the entire north façade of all rooftop structures on the Condominium, as part of its duty to maintain common areas. This provision is for the benefit of Erie Condominium Association located at 2351 Champlain Street, N.W., Washington, D.C. ("Erie

Association"). This provision may not be modified in any manner without the express written consent of the Erie Association, which shall only be withheld if the Erie Association reasonably determines that the proposed modifications would adversely affect Erie Condominium or its owners and occupants. . . .

9.18. Provisions for the Benefit of Erie Condominium Association located at 2351 Champlain Street, N.W., Washington, D.C. ("Erie Association"). The following restrictions on the use of the Condominium property are for the benefit of Erie Association and may not be modified in any manner without the express written consent of the Erie Association, which shall only be withheld if the Erie Association reasonably determines that the proposed modifications would adversely affect Erie Condominium or its owners and occupants.

(a) Neither the Association nor any Unit Owner shall place a partition, screen, or other improvement within or on the roof terrace areas.

(b) Neither the Association nor any Unit Owner shall place or permit the placement of any foliage, fixtures, equipment or objects (except for umbrellas) on the roof terraces that exceed the height of the existing railings on the roof terraces or which would have the practical effect of creating a visual partition that substantially obstructs views from the Erie Condominium through the railings on the Building's rooftop terraces.

(c) Neither the Association nor any Unit Owner shall undertake any alteration or addition to the mechanical penthouses, roof structures, parapet on Condominium, parapet on the roof structures, roof terraces, roof surface, railings on the roof, and/or equipment on top of the Condominium that would increase their height(s), elevation(s) or size, and/or would relocate or add any mechanical equipment on the roof surface within view of Erie Condominium . . . and/or would be

situated closer than twenty (20) feet from The Erie Condominium; except as reasonably necessary to maintain, repair or replace the current equipment in the same locations with models of similar size, function and capacity;

   (d)   Neither the Association nor any Unit Owner shall construct or install railings surrounding the roof terrace areas that exceed three (3) feet in height, or the minimum height required by any governing building code, whichever is greater, or shall alter the style of the railings if they are visible from Erie Condominium; and

   (e)   Except for periodic maintenance and repair activities, neither the Association nor any Unit Owner shall use or occupy the portions of the Condominium's roof that are finished with a TPO surface or are part of the green roof of the Building.  Should the Association elect to cover the TPO surface with the green roof (or similar plant material that is no higher than the existing green roof), this use and occupancy restriction will also apply to those areas.

The "Declarant" is identified as "2337 Champlain Street, LLC."[3]   Its managing member, CCRE, through a representative of that company, signed the amendment on the Declarant's behalf.  The bylaws were recorded with the Recorder

---

[3] The District of Columbia Condominium Act employs the term "Declarant" to mean "any person or group of persons acting in concert who: (A) Offers to dispose of the person's or group's interest in a condominium unit not previously disposed of; (B) Reserves or succeeds to any special declarant right; or (C) Applies for registration of the condominium." D.C. Code § 42-1901.02(11).  An "Affiliate of a declarant" is defined to mean "any person who controls, is controlled by, or shares common control with a declarant." *Id.* § 42-1901.02(11A)(A).  The term "person" is not limited to natural persons, but includes a corporation, partnership, or other entity "capable of holding title to real property." *Id.* § 42-1901.02(25).

of Deeds ten days after their execution on August 19, 2016. By that date, the Developers had begun selling units in the Champlain Condominium, but no sales had yet closed.

Appellants Donald Mullikin, Sharon Cao, Pedro Coli, and Luis and Vianka Luy (collectively, the "Individual Champlain Owners"), each entered into agreements with 2337 LLC to purchase units in the Champlain and at least one rooftop cabana. The condominium documents provided to them for review included the original bylaws but not the August amendments.

Mr. Mullikin was the first of the Individual Champlain Owners to sign a contract. On June 3, 2016, he agreed to purchase a unit and rooftop Cabanas #4, #5, and #6. Prior to closing, Mr. Mullikin learned that a "portion of the deck may be pulled up" from the cabanas and that the Developers "did not have a solution" yet, that they were "having difficulty with the building next door," and that the litigation with Erie was holding up the certificate of occupancy and "needed to be settled." 2337 LLC conveyed title to a condominium unit and the three cabanas to Mr. Mullikin by deed dated August 23, 2016, and recorded on September 6, 2016. Mr. Mullikin asserts that he did not know the extent to which the deck for Cabana #6 would be reduced until after his closing in September 2016, and that he first

learned of the August bylaw amendments during the first Unit Owners Association meeting held around September 8.

Ms. Cao entered into an agreement with 2337 LLC on July 24, 2016, to purchase a unit in the Champlain and Cabana #2. 2337 LLC conveyed title to her by deed dated August 24, 2016, and recorded on September 7, 2016. Ms. Cao moved in that same month. She claims it was only then and in the next few months that she learned of the restrictions imposed by the amended bylaws and that the size of her cabana had been reduced "substantially."

Pedro Coli signed a contract to purchase a condo unit and Cabana #3 on June 26, 2016. He seems to have learned early on that changes to the roof were in the offing, because his real estate agent emailed one of the sales agents, Mr. Blakemore, on July 1, 2016, to report that Mr. Coli was rethinking his purchase of Cabana #3 because "the new, smaller dimensions fundamentally change how the rooftop space can be used" and it went from "a desirable entertaining space to more of a personal one[.]" Mr. Coli nonetheless went ahead with his purchase. By deed dated August 1, 2016, and recorded on September 13, 2016, 2337 LLC conveyed title and rights to Mr. Coli. He received his closing disclosure information when he closed on September 6, 2016.

Mr. and Ms. Luy viewed the Champlain Condominium roof and cabana space with Mr. Blakemore sometime before they entered into their agreement on July 16, 2016, to purchase a unit and Cabana #1. Later, during the final walkthrough of their condo unit, they asked to look at Cabana #1 and were "taken by surprise" by the cabana's diminished area space. They inquired, and on September 26, 2016, they were told by Vicki Johnston, a CCRE representative, that "the developer had to enter into an agreement with the neighbors at the Erie Condominium . . . and it resulted in changes to some of the roof decks in order to address the Erie's issues of privacy and views." Ms. Johnston added that "[i]f you decide you do not want to purchase the roof deck cabana at this point with the changes the developer was required to make due to the agreement, we are willing to remove it from your contract before you go to closing" and that "we would never want you to buy something you aren't comfortable with, so we can delete it from your purchase agreement if you would like us to." Mr. Luy confirmed that he still intended to purchase Cabana #1. The Luys' deed was dated October 12, 2016, and recorded on October 24, 2016. They received the closing disclosure on October 7, 2016. The closing was on October 14, 2016.

When they agreed to purchase their units and cabanas, the Individual Champlain Owners all signed what appears to be essentially the same form sales

contract. Paragraph 22 of the contracts, captioned "Post-Closing Disputes," states that the purchaser agrees

> that any and all claims and disputes that are in away [sic] related to the property, the condominium and/or the construction and development of the property, regardless of whether the claim sounds in tort, contract or statute, and regardless of whether the claim is against the seller, developer and/or general contractor of the proerty [sic] (collectively, "SELLER"), shall be subject to the provisions of this paragraph 22, which paragraph 22 shall survive closing. . . . Any claim contemplated by this paragraph 22 shall be asserted within 1 year after the closing on the sale of the property, and, if not, shall thereafter be barred.[4]

The Individual Champlain Owners also signed a separate document acknowledging receipt of the "condominium instruments," including the "Public Offering Statement." In the District of Columbia, pursuant to the Condominium Act, there must be a "public offering statement" of the condominium that "shall disclose fully and accurately the characteristics of the condominium and the units therein offered and shall make known to prospective purchasers all unusual and material circumstances or features affecting the condominium" and the "declarant" must file with the Mayor "a statement of any material change in the information

---

[4] Each purchaser also "acknowledge[d] and agree[d] that the provisions of this paragraph 22 apply both to individual claims that purchaser may have against seller as well as any claims that the condominium association may have against the seller."

contained in the public offering statement."[5]   The Public Offering Statement provided by 2337 LLC contained the "Declaration, the Bylaws and the related documents for 2337 Champlain Street Condominium[.]"

In their purchase agreements Ms. Cao, Mr. Coli, and the Luys acknowledged having received the condominium instruments after the second settlement agreement with Erie was signed on June 17, 2016; only Mr. Mullikin entered into his agreement before that settlement agreement was executed.  All of the Individual Champlain Owners acknowledged having received the bylaws before the bylaw amendments were adopted on August 9, 2016.  Mr. Mullikin and Ms. Cao closed on their properties on August 23 and August 24, respectively, which was a few days after the bylaw amendments were recorded on August 19.  The Individual Champlain Owners and the Developers dispute whether or to what extent the Owners had notice of the amended bylaws and the second settlement agreement when they closed on their properties.

---

[5] D.C. Code § 42-1904.04(a), (c).

## B. Procedural History

Approximately two years later, on August 23, 2018, the Individual Champlain Owners and the Unit Owners Association of 2337 Champlain Street Condominium filed suit in Superior Court against the Erie Condominium Association and the Developers.[6] Against Erie, the plaintiffs sought a declaratory judgment stating that (1) they were not bound by the settlement agreement between Erie and the Developers and (2) the bylaw amendments giving Erie what the plaintiffs characterized as a "veto" over certain changes to the bylaws was invalid because it violated D.C. Code § 42-1902.27(b), a Condominium Act provision stating in pertinent part that if a condominium has any units "restricted exclusively to residential use and there is any unit owner other than the declarant, the condominium instruments shall be amended only by agreement of unit owners of units to which 2/3 of the votes in the unit owners' association pertain, or any larger majority that the condominium instruments may specify[.]"

The plaintiffs charged CCRE with having breached its obligation under the Condominium Act to include in the Public Offering Statement a copy of any "contract or agreement substantially affecting the use or maintenance of, or access

---

[6] The complaint also named certain Erie unit owners as defendants, but the plaintiffs thereafter dismissed their claims against those individuals.

to all or any part of the condominium with a brief narrative statement of the effect of each such agreement upon a purchaser, the condominium unit owners and the condominium[.]"[7]  The complaint alleged that CCRE failed to modify the Public Offering Statement for the Champlain to disclose the second settlement agreement with Erie and the amendment of the bylaws, that the disclosure packets the Individual Champlain Owners received in 2016 did not contain those documents, and that those Owners did not see or become aware of the settlement agreement or the bylaw amendments until after they had purchased their units and cabanas.  Based on those nondisclosures, the complaint also asserted claims against the Developers for (common law) fraud in the inducement and for violation of the D.C. Consumer Protection Procedures Act ("CPPA").[8]  The Individual Champlain Owners alleged that they would not have purchased their units or the cabanas had they known about the settlement agreement or the bylaw amendments, which reduced the size of their cabana decks and restricted their use of the decks.  The Owners did not seek rescission of their contracts, however.  Instead, they sought compensatory and punitive damages from the Developers.

---

[7] D.C. Code § 42-1904.04(a)(7).

[8] D.C. Code §§ 28-3901 to -3913.

The defendants answered the complaint, denying any liability. In addition, the Erie Condominium Association filed a counterclaim for breach of the settlement agreement and the amended bylaws. This was based on allegations of the plaintiffs' failure to maintain a green screen on the north façade of the Champlain and their placement of objects on the roof that exceeded the height limitations. Erie sought declaratory and injunctive relief.

The parties eventually cross-moved for summary judgment on all of their claims. On April 30, 2020, the trial court ruled on the motions in one omnibus order, concluding that while "there could be disputes as to subsidiary facts, no genuine dispute as to material facts exists sufficient to bar summary judgment" on any of the claims and counterclaims.

The court granted summary judgment in favor of the Developers on all claims asserted against them by the Champlain plaintiffs. The court ruled that the common law fraud claims were barred by the post-closing dispute provision (paragraph 22) in each of the sales contracts, which required such claims to be asserted within one year of the closing. The court concluded that this contractual restriction on the time for bringing claims did not apply to the plaintiffs' CPPA and Condominium Act claims because those are not "contract" claims. But the court awarded summary judgment to the Developers on those statutory claims on the ground that the plaintiffs

were on constructive (if not actual) notice of the material restrictions imposed by the amended bylaws. And regarding the Condominium Act claim based on the Developers' deficient Public Offering Statement, the court held that the plaintiffs failed to demonstrate damages "beyond the mere violation of the statutory right," which they needed to do to assert a claim under the Act.[9]

As regards the claims for declaratory relief brought by the plaintiffs and the Erie Condominium Association against each other, the court granted summary judgment to the plaintiffs with respect to the settlement agreement, but to Erie with respect to the bylaw amendments. The court ruled that the Condominium Act allowed the Champlain Unit Owners Association to terminate the settlement agreement because it had been entered into by the declarant for a period exceeding two years.[10] However, the court found that the bylaw amendments did not violate

---

[9] Citing *Campbell v. Fort Lincoln New Town Corp.*, 55 A.3d 379, 386 n.24 (D.C. 2012).

[10] Citing D.C. Code § 42-1903.02(b)(1) ("If entered into at any time prior to the expiration of the period of declarant control . . . , no contract or lease entered into with the declarant or an affiliate of a declarant, other than [immaterial exceptions], which is directly or indirectly made by or on behalf of the unit owners' association or the unit owners as a group, shall be entered into for a period in excess of 2 years. Any contract or agreement entered into after March 8, 1991, may be terminated without penalty by the unit owners' association or the executive board of the unit owners' association upon not less than 90 days written notice to the other party."). It is not clear to us what the consequences would be if the Champlain Unit Owners Association purported to terminate the settlement agreement. Erie has not

the Condominium Act, and were binding on the plaintiffs, because there was no unit owner other than the declarant when the amendments were made and recorded. And the court reasoned that "[r]equiring the express written consent of a third-party" (i.e., Erie) to amend the bylaws was permissible in light of case law upholding the authority of a condominium unit owners association to grant an easement through the common elements of the condominium.[11] The court denied Erie's request for injunctive relief, however, apparently viewing such relief as unnecessary.

On June 12, 2020, the Individual Champlain Owners and the Unit Owners Association moved to partially vacate the court's ruling. (They had not yet appealed the court's order.) They argued, inter alia, that CCRE was not a signatory to the sales contracts and therefore could not rely on the contractual time limit of one year for filing claims as a defense to their claims of common law fraud, and that the court erred in denying their statutory claims against the Developers based on their constructive rather than actual notice of the amended bylaws. In addition, regarding their claims against Erie, they argued that the court erred by analogizing the bylaw

cross-appealed this ruling by the trial court, and the parties have not discussed its significance on appeal. Under those circumstances, we do not address the question in this opinion.

[11] Citing *Ochs v. L'Enfant Tr.*, 504 A.2d 1110 (D.C. 1986).

amendments to the easement granted by the condominium unit owners association in *Ochs*,[12] and that the "veto" granted to Erie in the amended bylaws does not create an easement and impairs the condominium unit owners' voting rights under the Condominium Act. In addition, the plaintiffs also argued, for the first time, that the amended bylaws were void because they were unreasonable.

In opposition, the Developers argued, inter alia, that the statutory claims against them, as well as the common law fraud claim, were barred by the post-closing dispute provision (paragraph 22) of the sales contracts. The Erie Condominium Association also opposed the motion to vacate, arguing inter alia that the trial court's reliance on *Ochs* was proper (for one reason, because the easement in *Ochs* provided rights to a third party similar to the rights granted Erie in this case). On October 21, 2021, the trial court denied the motion, stating that it "relies primarily on reformulations of the arguments and issues previously addressed by the Court" and "should be denied for the same reasons the Court stated in its April 30, 2020 Order."

---

[12] *See id.*

## II.

Appellants filed their notice of appeal on November 12, 2021, designating both the trial court's initial order of April 30, 2020, and its October 21, 2021, order denying their motion to vacate.  Appellees argue that the appeal of the initial order is not timely.  In pertinent part, our appellate rules provide that "[t]he notice of appeal in a civil case must be filed . . . within 30 days after entry of the judgment or order from which the appeal is taken unless a different time is specified by these Rules . . . ."[13]  The Rules do specify a different time if a party files in Superior Court a timely motion to vacate, alter, or amend the judgment or order.  In that event, D.C. App. R. 4(a)(4)(A) provides that the 30-day time to appeal does not begin to run until the entry of the order disposing of that motion.  Appellants relied on this latter provision in waiting until November 12, 2021, to note their appeal of the April 30, 2020, order.  Appellees argue, however, that this reliance was misplaced, because the motion to vacate was not timely: Superior Court Civil Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment," and appellants did not file their motion to vacate in Superior Court within 28 days of April 30, 2020.

---

[13] D.C. App. R. 4(a)(1).

However, appellees' argument fails in light of a series of orders issued by the Chief Judge of the Superior Court (S.C.C.J.) tolling filing deadlines in Superior Court during the COVID-19 pandemic. A tolling order was in effect on April 30, 2020, and the tolling continued without interruption past June 12, 2020, when appellants filed their motion to partially vacate the judgment.[14] The motion to vacate therefore was timely even though it was filed more than 28 days after April 30, 2020. Hence, the notice of appeal filed within 30 days of the denial of the motion to vacate

---

[14] Pursuant to D.C. Code § 11-947(a)(2)(B), the S.C.C.J. has authority in certain emergency situations "to delay, toll, or otherwise grant relief from the time deadlines imposed by otherwise applicable laws or rules for such period as may be appropriate for any class of cases pending or thereafter filed in the Superior Court." As we explained in *Sharps v. United States*, the S.C.C.J., with consent from the Joint Committee on Judicial Administration, "exercised the emergency authority granted by § 11-947 in response to the COVID-19 pandemic." 246 A.3d 1141, 1145 (D.C. 2021). The first order tolled "all deadlines and time limits in statutes, court rules, and standing and other orders issued by the court that would otherwise expire before May 15, 2020[.]" Superior Court of the District of Columbia Order, at 2 (Mar. 18, 2020), *as amended* (Mar. 19, 2020), https://www.dccourts.gov/sites/default/files/Order-Attachment-PDFs/Order-3-19-20.pdf; https://perma.cc/Z4BZ-5RUS. A similar order was in effect through June 19, 2020. *See* Superior Court of the District of Columbia Order, at 2 (May 14, 2020), https://www.dccourts.gov/sites/default/files/matters-docs/General%20Order%20pdf/Amended-Order-5-14-20.pdf; https://perma.cc/2PVZ-LY2X.

was timely as to the April 30, 2020, initial order, as well as the October 21, 2021, order denying the motion to vacate.[15]

## III.

As this appeal is from the award of summary judgment to the Developers and to the Erie Condominium Association on appellants' claims against them, our review is de novo; "we conduct an independent review of the record, and our standard of review is the same as the trial court's standard in considering the motion for summary judgment."[16] A trial court should grant summary judgment to a party that shows there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[17] In assessing whether that standard has been met, "we view the

---

[15] While we have yet to address this precise question, we are unpersuaded by Erie's undeveloped assertion that the May 21, 2020, order of this court, which provided that this "court is no longer suspending or tolling filing deadlines[,]" has any bearing on whether the motion to vacate was timely filed in Superior Court under its rules for purposes of D.C. App. R. 4(a)(4)(A). *See* Order regarding DC Court of Appeals Operations, at 2 (D.C. May 21, 2020), https://www.dccourts.gov/sites/default/files/2020-05/DCCA_Order_Re_Operations_During_Coronavirus_Emergency_5_21_2020.pdf; https://perma.cc/9QUM-CR3D. That order applied only to filing deadlines in this court and in no way purported to limit the effect of tolling in Superior Court.

[16] *Jane W. v. President and Dirs. of Georgetown Coll.*, 863 A.2d 821, 825 (D.C. 2004).

[17] *Id.* at 825-26.

evidence in the light most favorable to the non-moving party, [but] mere conclusory allegations by the non-moving party are legally insufficient to avoid the entry of summary judgment."[18]

Appellants argue that the trial court erred as a matter of law in rejecting their claims against the Developers for failure to inform them of the 2016 bylaw amendments before they closed on their condominium purchases, and their claims against Erie that the amended bylaws violate the Condominium Act and are unreasonable. We begin our discussion with the Individual Champlain Owners' claims against the Developers.

## A.  The Claims Against the Developers

Although the Individual Champlain Owners object to each of the grounds on which the trial court granted summary judgment to the Developers, we find it necessary to consider only the Developers' contention that the claims against them are time-barred by paragraph 22 of the sales contracts.[19]  That provision

---

[18] *Id.* at 826.

[19] It should be noted that only the Individual Champlain Owners have claims against the Developers.  Although the Champlain Unit Owners Association also was a plaintiff and is an appellant here, the Association itself did not purchase anything from either of the Developer defendants.  It therefore has no claims against those defendants for common law fraud or the alleged statutory violations arising from the

unambiguously required appellants to bring "any and all" claims, specifically including statutory claims, against the "Seller" (defined as including "the seller, developer and/or general contractor" of the property) relating to the purchased property within one year "after the closing on the sale of the property[.]" While the trial court concluded that paragraph 22 applies only to appellants' common law fraud claim, the Developers have continued on appeal to press their argument that it also bars appellants' statutory claims. "Interpretation of a contract is a legal question this court reviews *de novo*."[20] As the Developers' purely legal argument was passed upon by the trial court and has been fully briefed on appeal, "[w]e perceive no risk of unfair prejudice" to appellants from our consideration of it.[21] Finding it

---

condominium sales. (Moreover, as the Developers note, the Association cannot assert any claim under the CPPA because it is not a "consumer" within the meaning of D.C. Code § 28-3901(a)(2)).

[20] *Hossain v. JMU Props., LLC*, 147 A.3d 816, 819 (D.C. 2016). "In interpreting a contract, we must determine how a reasonable person in the position of parties would understand the disputed provision and honor their expressed intentions." *Id.* at 820. Where a contract is unambiguous, summary judgment is appropriate. *Byrd v. Allstate Ins. Co.*, 622 A.2d 691, 693-94 (D.C. 1993).

[21] *See District of Columbia v. Helen Dwight Reid Educ. Found.*, 766 A.2d 28, 33-34 n.3 (D.C. 2001).

meritorious, we affirm the award of summary judgment to the Developers on the ground that paragraph 22 bars all of appellants' claims against them.[22]

Apart from paragraph 22, appellants' claims of common law fraud and violation of the Condominium Act and the Consumer Protection Procedures Act would all be subject to a three-year statute of limitations, as provided in D.C. Code § 12-301(8). But "statutes of limitations provide only a default rule that permits parties to choose a shorter limitations period" unless the limitations period is "unreasonably short, or . . . a 'controlling statute' prevents the limitations provision from taking effect."[23] The Condominium Act and the CPPA do not preclude parties from agreeing to a shorter limitations period for claims arising under them.

---

[22] We may affirm the judgment on appeal for reasons different from those relied on by the trial judge, and without appellees having taken a cross-appeal. *See In re O.L.*, 584 A.2d 1230, 1232 n.6 (D.C. 1990).

[23] *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 107, 109-10 (2013) (applying these principles in context of ERISA); *see also Ord. of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947) ("[I]n the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period.").

Moreover, there is nothing unique about these particular types of statutory claims that would prevent the court from applying a contractual limitation.[24]

Our cases also support the presumptive reasonableness of a contractually agreed-upon one-year limitations period in place of a longer statutory period.[25] Shortening the period for asserting a claim from three years to one year is not inherently unreasonable.[26] "A contractually modified limitations period is

---

[24] *See, e.g.*, *Hays v. Mobil Oil Corp.*, 930 F.2d 96, 100 (1st Cir. 1991) (validating a one-year contractual limitations period and holding that its application to the plaintiff's unfair and deceptive trade practice claims did not violate public policy); *Wechsler v. HSBC Bank USA, N.A.*, No. 15-CV-5907, 2016 WL 1688012, at *4 (S.D.N.Y. Apr. 26, 2016) (applying a one-year contractual limitations period to the plaintiff's deceptive practices act claim, and noting that "[c]ontractual limitations periods are frequently applied to statutory claims"), *aff'd*, 674 F. App'x 73 (2d Cir. 2017) (summary order). *But see Doucette v. Neutron Holdings, Inc.*, 288 A.3d 339, 344 (D.C. 2023) (noting decisions that have found "a time limit of a year to be unconscionable in at least some circumstances, for example where the time limit conflicted with a longer statute of limitations provided by a remedial statute").

[25] *See Centennial Ins. Co. v. Dowd's Inc.*, 306 A.2d 648, 650-51 (D.C. 1973) (upholding validity of twelve-month limitations provision in insurance policy and declaring that "[s]uch a provision may not be rewritten judicially"); *Roumel v. Niagara Fire Ins. Co.*, 225 A.2d 658, 659 & n.2 (D.C. 1967) (enforcing twelve-month limitations period in an insurance policy); *cf. Doucette*, 288 A.3d at 344 (rejecting argument that an arbitration agreement was unconscionable because it required the plaintiff to bring her claim within one year instead of within the otherwise applicable three-year statute of limitations, but reserving for the arbitrator the "related but distinct" question of whether the "time limit itself is enforceable").

[26] *Cf.* D.C. Code § 28:2-725 (titled "Statute of limitations in contracts for sale" and providing that "(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original

unreasonable if the reduced limitations period effectively deprives a party of the reasonable opportunity to vindicate the party's rights" by investigating and pursuing a judicial remedy.[27]  We perceive no reason the one-year limitations period in paragraph 22 of the condominium sales agreement in this case would have had such an effect, and no evidence that it did.  To be sure, "[w]hen determining whether a contractual provision that modifies a limitations period is reasonable, it is important for a court to focus on the underlying issues, e.g., inequality of bargaining power, one-sidedness of a provision, as opposed to the label that might be attached to the contract."[28]  But no such concerns are present here.

Appellants argue that their claims involve allegations of fraud, so the limitation should not apply to them.  We are not persuaded on the facts of this case.  The claims of fraud relate to the Developers' alleged failure to disclose their settlement with Erie, and the bylaw amendments reflecting that settlement, prior to closing on their sales contracts; the Individual Champlain Owners do not argue that the Developers misled them with respect to paragraph 22 or any other contractual

---

agreement the parties may reduce the period of limitation to not less than one year but may not extend it.").

[27] 54 C.J.S. *Limitations of Actions* § 64.

[28] *Id.*

provisions, or impaired their ability to discover and pursue claims arising from the Erie settlement and the bylaw amendments. Rather, the record confirms that the Owners' ability to investigate and litigate those claims was entirely unimpeded by the contractual shortening of the limitations period to one year. The Luys and Mr. Coli discovered the changes to the dimensions of the cabanas (which was one principal material difference made by the amendment of the bylaws) *before they closed* on their purchases and thus before the limitations period began to run. And Mr. Mullikin and Ms. Cao learned of the changes to their cabanas shortly after their closings. The Individual Champlain Owners had ample notice and time to bring their claims within one year of their closings.

Appellants also argue that CCRE was not a party to the sales contracts because those contracts were only signed by 2337 LLC, and therefore that paragraph 22 does not apply to appellants' claims against CCRE. We disagree. Paragraph 22 specifically states that it applies to claims against the "developer," in addition to claims against the "seller" and the "general contractor." CCRE thus clearly was an intended third-party beneficiary of the sales contracts, with the legal right to enforce them even though it was not a signatory and it was not expressly named in the

contracts.[29] This legal right included the right to use the limitations provision of the contracts as a defense to appellants' claims.[30]

For the foregoing reasons, we conclude that appellants' claims against the Developers are time-barred, and we affirm the grant of summary judgment in the Developers' favor.

## B. The Claims Against Erie

Appellants contend that the trial court erred as a matter of law in upholding the amended bylaws. The bylaw amendments are "void," appellants argue, because they violate D.C. Code § 42-1902.27(b) by barring the Champlain unit owners from amending them without the Erie Condominium Association's consent, and because the restrictions imposed by the amended bylaws on the Champlain unit owners' use

---

[29] *See A.S. Johnson Co. v. Atl. Masonry Co.*, 693 A.2d 1117, 1122 (D.C. 1997) ("One who is not a party to a contract nonetheless may sue to enforce its provisions if the contracting parties intend the third party to benefit directly thereunder." (quoting *Western Union Tel. Co. v. Massman Constr. Co.*, 402 A.2d 1275, 1277 (D.C. 1979)); *id.* at 1123 (holding that a third-party beneficiary need not be "expressly named" in the contract to enforce it); *accord Hossain*, 147 A.3d at 820 ("To be intended, a beneficiary need not be named in the contract, as long as he or she is ascertainable from the contract and the circumstances of the contract." (quoting *Kitty Hawk Aircargo, Inc. v. Arthur D. Little, Inc.*, 934 F. Supp. 16, 20 (D. Mass. 1996))).

[30] *See Woodfield v. Providence Hosp.*, 779 A.2d 933, 937 (D.C. 2001).

of the rooftop are unreasonable. For the following reasons, we disagree with both assertions and agree with appellee Erie that the amended bylaws constituted an appropriate exercise of the declarant's authority.

### 1. Compatibility with D.C. Code § 42-1902.27(b)

Appellants' first contention requires us to construe D.C. Code § 42-1902.27, the section of the Condominium Act containing provisions relating to the amendment of condominium instruments, including bylaws. Our review of questions of statutory interpretation is de novo, and it begins with the language of the statute itself.[31] That is where it usually ends, as well, for ordinarily "when the plain meaning of the statutory language is unambiguous, the intent of the legislature is clear, and judicial inquiry need go no further."[32] Appellants in this case rely solely on what they consider to be the plain language of Section 42-1902.27(b). We do much the same, except we find it instructive to consider that subsection in light of

---

[31] *See, e.g., District of Columbia v. Place*, 892 A.2d 1108, 1110-11 (D.C. 2006).

[32] *Id.* at 1111 (brackets omitted) (quoting *District of Columbia v. Gallagher*, 734 A.2d 1087, 1091 (D.C. 1999)).

the rest of Section 42-1902.27.  We do not reach the conclusion appellants would have us reach.[33]

Preliminarily, we must note Erie's argument that appellants' challenge to the validity of the amended bylaws is time-barred.  The bylaw amendments were executed and recorded by the declarant (2337 LLC) when it was the sole unit owner in the building and therefore was entitled under Section 42-1902.27(a) to "unilaterally amend the condominium instruments."  The amendments became "effective upon recordation," *id*., which occurred on August 19, 2016.  Subsection (c) of Section 42-1902.27 states that "[a]n action to challenge the validity of an amendment adopted by the unit owners' association pursuant to this section may not be brought more than 1 year after the amendment is recorded."  Erie asserts, and appellants do not dispute, that because the declarant was the only unit owner when it adopted the bylaw amendments at issue here, the declarant constituted the "unit

---

[33] To be sure, even when the plain meaning of a statute appears to be clear, the literal words of a statute are not always the end of the inquiry.  However, no party suggests (and we do not see) that this is a case in which a "court may refuse to adhere strictly to the plain language of a statute in order 'to effectuate the legislative purpose' as determined by a reading of the legislative history or by an examination of the statute as a whole."  *Id*. (quoting *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 754 (D.C. 1983) (en banc)).

owners' association" for purposes of applying Subsection (c) to those amendments.[34]

Therefore, Erie argues, any challenge to the validity of the amendments had to be brought by August 19, 2017, at the latest. However, appellants did not file their lawsuit until August 23, 2018. Hence, the suit was time-barred and, Erie argues, we should affirm the award of summary judgment to Erie on that ground (even though that was not the basis for the trial court's ruling).

Appellants' brief rejoinder to this argument suggests that Erie is not "the proper party" to raise this limitations argument and that the limitations period should not apply because the amendments are "void" under the statute. Neither argument is elaborated in detail; certainly it is clear to us that Erie at least has "standing," in the ordinary sense of having a stake in the outcome, to invoke a statute imposing a time limit on a challenge to its rights under the Champlain bylaws. However, the trial court did not rule on Erie's statute of limitations argument, and this court has not heretofore had occasion to interpret Subsection (c) of Section 42-1902.27. We

---

[34] *Cf.* D.C. Code § 42-1903.02(c) ("If the unit owners' association is not in existence or does not have officers at the time of the creation of the condominium, the declarant shall, until there is such an association with such officers, have the power and the responsibility to act in all instances where this subchapter or the condominium instruments require or permit action by the unit owners' association, its executive board, or any officer or officers.").

exercise our discretion not to reach the issue in this case, as we are persuaded that the amended bylaws do not violate the Condominium Act as appellants contend.[35]

Appellants object to the provisions of the amended bylaws specifying that their restrictions on the use of the Champlain rooftop "may not be modified in any manner without the express written consent of the Erie Association." They argue that those provisions violate D.C. Code § 42-1902.27(b), which allows the bylaws of a condominium to be amended by a two-thirds vote of the unit owners, because the provisions allow Erie to veto any two-thirds vote by the unit owners to alter the rooftop use restrictions.

We do not read Subsection (b) as precluding such a limitation on the voting power of the unit owners. In pertinent part, Subsection (b) states that "the condominium instruments shall be amended only by agreement of unit owners of units to which 2/3 of the votes in the unit owners' association pertain[.]"[36] We read

---

[35] We note that if the one-year statute of limitations on challenging the validity of a bylaw amendment applies to amendments recorded by the declarant and runs from the date of recordation, there may be cases in which the opportunity of unit owners or their association to challenge the amendment is illusory because more than a year passes before the units are put on sale. This was not such a case, however.

[36] In its entirety, Subsection (b) reads as follows:

> (b) If any of the units in the condominium are restricted exclusively to residential use and there is any

this to mean that a two-thirds vote of the unit owners is necessary to amend the condominium instruments. But it does not mean that such a vote will always and in every case be sufficient to effect an amendment. Subsection (b) does not preclude the adoption of other conditions or restrictions on amendments.

Subsection (e) of the statute confirms this by enumerating a number of amendments that, in the absence of express authorization, are impermissible regardless of the vote.[37] (The enumeration is surely not exhaustive; it is easy to

---

unit owner other than the declarant, the condominium instruments shall be amended only by agreement of unit owners of units to which 2/3 of the votes in the unit owners' association pertain, or any larger majority that the condominium instruments may specify, except in cases for which this chapter provides different methods of amendment. If none of the units in the condominium is restricted exclusively to residential use, the condominium instruments may specify a majority smaller than the minimum specified in the preceding sentence.

D.C. Code § 42-1902.27(b).

[37] Subsection (e) states:

(e) Except to the extent expressly permitted or required by other provisions of this chapter, an amendment to the condominium instruments may not:

(1) Create or increase special declarant rights;

(2) Increase the number of units;

imagine other amendments that would be legally impermissible regardless of the vote, such as amendments that would discriminate against unit holders in violation of the Human Rights Act; *see* D.C. Code § 2-1402.21.) Nor can the statute plausibly be read as forbidding provisions in the condominium instruments that condition amendments on the consent of third parties who are not unit owners but who have an interest in the property. This is confirmed by Subsection (g) of the statute, which recognizes that condominium instruments may contain provisions "requiring action [and consent] on the part of the holder of a mortgage or deed of trust on a unit to amend the condominium instruments[.]"[38]

---

     (3) Change the boundaries of any unit;

     (4) Change the undivided interest in the common elements, the liability for common expenses, the right to surplus funds, or the number of votes in the unit owners' association that pertains to any unit; or

     (5) Change the uses to which any unit is restricted, in the absence of the unanimous consent of the unit owners.

D.C. Code § 42-1902.27(e).

[38] Subsection (g) states:

     (g)(1) Unless otherwise specified in the condominium instruments, if the condominium instruments contain a provision requiring action on the part of the holder of a mortgage or deed of trust on a unit to amend the condominium instruments, that provision

The bylaw amendments at issue in this case are analogous to the provisions for mortgage and deed of trust holders recognized in Subsection (g), in that they protect a property interest of Erie in the Champlain Condominium by requiring

———————————

shall be deemed satisfied if the procedures under this subsection are satisfied.

(2) If the condominium instruments contain a provision requiring action on the part of the holder of a mortgage or deed of trust on a residential unit to amend the condominium instruments, the unit owners' association shall cause a copy of a proposed amendment to the condominium instruments to be delivered to the last known address of each holder of a mortgage or deed of trust entitled to notice. Absent notice of written instructions to the contrary, the association may reasonably rely upon the address of each holder as contained in the recorded mortgage or deed of trust.

(3) If the holder of a mortgage or deed of trust of a residential unit that receives the proposed amendment fails to object, in writing, to the proposed amendment within 60 days from the date the proposed amendment is mailed or delivered to the holder, the holder shall be deemed to have consented to the adoption of the amendment.

(4) The inadvertent failure to deliver a copy of any proposed amendment to the condominium instruments to each holder of a mortgage or deed of trust entitled to notice, despite good faith efforts by the unit owners' association, shall not invalidate any action taken pursuant to this section.

D.C. Code § 42-1902.27(g).

Erie's consent to any amendments that would modify that interest. Contrary to appellants' contention in the trial court and on appeal, the property interest here is an easement—what Erie describes as an "easement of view"—over the Champlain Condominium rooftop that was granted pursuant to the Developers' settlement agreement with Erie in order to protect the view of Erie's unit owners.[39] The Condominium Act specifically provides that a unit owners' association of a condominium is authorized "on behalf of all the unit owners and their successors in title to grant easements through the common elements[.]"[40] That authorization implies the power to amend the condominium instruments to effectuate such easements.

---

[39] Appellants assert that Erie cannot rely on appeal on the existence of an easement because that argument was not made before, or expressly ruled upon by, the trial court. However, given the importance of the dispute with Erie to understanding the amended bylaws, we do not believe our analysis should be constrained to ignore the nature of Erie's interest in enforcing them. In any event, we may affirm on somewhat different grounds than those relied upon by the trial court where there will be no procedural unfairness to the opposing party, *see Helen Dwight Reid Educ. Found.*, 766 A.2d at 33-34 n.3, and this question of law has been fully briefed and argued.

[40] D.C. Code § 42-1903.08(b). As discussed above, the declarant of the Champlain Condominium stood in for the unit owners' association when it was the sole unit owner.

"An easement is '[a]n interest in land owned by another person, consisting in the right to use or control the land . . . for a specific limited purpose.'"[41] The easement in this instance was an easement by express grant in writing to the Erie Condominium Association that allowed it to control the utilization of the Champlain rooftop in specified respects.[42] "An express easement may be created through a contract or conveyance," as it was here; and because "'no particular words of art' are 'necessary to create an easement by express grant,' it does not matter that the parties did not use the word 'easement'" in their documentation.[43] Nor does it matter in this case that Erie is not a party to the Champlain Condominium bylaws. It was a

---

[41] *Martin v. Bicknell*, 99 A.3d 705, 708 (D.C. 2014) (alterations in original) (quoting Black's Law Dictionary 622 (10th ed. 2014)).

[42] The easement here contains both affirmative and negative covenants. *See* Restatement (Third) of Prop. (Servitudes) § 1.3 (Am. Law Inst. 2000) ("The nature of the burden determines whether a covenant is affirmative or negative. An 'affirmative covenant' requires the covenantor to do something; a 'negative covenant' requires the covenantor to refrain from doing something."). It appears that most of the restrictions in the Champlain Condominium's amended bylaws require it to refrain from blocking the Erie's views (a negative easement), though the bylaws also require that the Champlain maintain a green screen on the north façade of the roof (an affirmative easement). This is worth noting here because, unlike an affirmative easement, "a negative easement can only be created by an express grant." *Hefazi v. Stiglitz*, 862 A.2d 901, 911 (D.C. 2004).

[43] *Bd. of Trs., Grand Lodge of Indep. Ord. of Odd Fellows of D.C. v. Carmine's DC, LLC*, 225 A.3d 737, 743-44 (D.C. 2020) (quoting *Katkish v. Pearce*, 490 A.2d 626, 628 (D.C. 1985)).

third-party beneficiary of those bylaws. "The benefit of a servitude may be granted to a person who is not a party to the transaction that creates the servitude."[44] Such a grant to Erie was explicit here; the bylaws expressly state that the amendments are "for the benefit of Erie Condominium Association."[45] It was appropriate, and important, to incorporate Erie's easement in the bylaws (and to record the amended bylaws with the Recorder of Deeds, as was done) not only because a negative easement must be express, but also and more fundamentally because an easement is an interest that "'runs with the land,' . . . which is to say that, subject to notice concerns, it is binding on the servient property where the easement is located notwithstanding a change in ownership or occupancy."[46] Inclusion of Erie's easement in the Champlain Condominium's bylaws satisfied the "runs with the land" requirement explicitly. The bylaws state:

> All present and future Unit Owners and their tenants, licensees, invitees, servants, agents, employees and any

---

[44] Restatement (Third) of Prop. (Servitudes) § 2.6(2).

[45] *Cf. Jahanbein v. Ndidi Condo. Unit Owners Ass'n*, 85 A.3d 824, 831 (D.C. 2014) (concluding that bylaws were "intended primarily and directly to benefit the Condo Association and not a third-party unit owner, despite the incidental benefits a third-party unit owner might find in its provisions[,]" so a unit owner could not invoke the arbitration clause in the bylaws to compel arbitration of his dispute with another unit owner).

[46] *Bd. of Trs.*, 225 A.3d at 743 (quoting Restatement (Third) of Prop. (Servitudes) § 1.1(1)).

other person or persons who are permitted to use the Condominium shall be subject to these Bylaws and the other Condominium Instruments and to the Rules and Regulations of the Association. Acquisition, rental or occupancy of a Unit shall constitute the Unit Owner's, tenant's and occupant's acceptance and ratification of, and agreement to comply with, these Bylaws and the other Condominium Instruments, and any Rules and Regulations now existent or hereafter adopted.

For the foregoing reasons, we hold that the amended bylaws do not conflict with the requirement in D.C. Code § 42-1902.27(b) that the condominium instruments shall be amended only by a two-thirds vote of the unit owners.

## 2. Review of the Restrictions in the Amended Bylaws

In the alternative, appellants argue that the restrictions imposed on them by the amended bylaws must be struck down as void because they are "inherently unreasonable." In pressing this contention, appellants rely on prior cases from this court holding that "courts have equitable power to review the regulatory actions of condominium boards under a standard of 'reasonableness.'"[47] The cases relied upon

---

[47] *Bolandz v. 1230-1250 Twenty-Third St. Condo. Unit Owners Ass'n*, 849 A.2d 1010, 1014 (D.C. 2004) (citing *Johnson v. Hobson*, 505 A.2d 1313, 1317 (D.C. 1986)), *superseded by statute*, Condominium Amendment Act of 2014, D.C. Law 20-109, § 2(c), 61 D.C. Reg. 4304 (2014). "Under this standard, if a rule is reasonable the association can adopt it; if not, it cannot." *Johnson*, 505 A.2d at 1317 (brackets omitted) (quoting *Hidden Harbour Ests., Inc. v. Norman*, 309 So.2d 180, 182 (Fla. Dist. Ct. App. 1975)).

by appellants, however, were superseded by a 2014 amendment to D.C. Code § 42-1902.09, which now provides in Subsection (b) that the "decisions and actions of the unit owners' association and its executive board shall be reviewable by a court using the 'business judgment' standard."[48] The parties have not addressed the effect of this amendment in their briefing, and it is not entirely clear what standard of judicial review should apply to bylaw amendments made unilaterally by the declarant prior to any unit sales (pursuant to its authority to do so under D.C. Code § 42-1902.27(a)).[49]   However, since appellants' argument proceeds on the assumption that the applicable standard in this case is identical to the standard applied to decisions by unit owners' associations or their governing boards, we

---

[48] *See also* Condominium Amendment Act of 2014, Report on Bill No. 20-139 before the Committee on Economic Development, Council of the District of Columbia ("Report on Bill No. 20-139"), at 3 (Dec. 11, 2013) (explaining that the bill requires "that courts judge the appropriateness of condominium associations' actions . . . according to the business judgment rule" and that this standard would "replace the current 'reasonableness' standard" articulated in our prior case law (citing *Bolandz*, 849 A.2d 1010)).

[49] Erie argues that "the restrictions are entitled to a more deferential review" than the reasonableness standard because the bylaw amendments were recorded before the Individual Unit Owners took ownership of the units and Erie's easement was already a matter of public record. *See Ridgely Condo. Ass'n v. Smyrnioudis*, 660 A.2d 942, 947-49, 951 (Md. Ct. Spec. App. 1995) (recognizing that "a more deferential standard may be employed when considering provisions contained in original condominium documentation"), *aff'd on other grounds*, 681 A.2d 494 (Md. 1996).

assume arguendo that the bylaw amendments here are reviewable under the business judgment standard.[50]

In its "classic formulation," the business judgment rule creates a rebuttable presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company[.]"[51] We have explained that in "practical terms" it means that governing "decisions will be respected by courts unless the [decision makers] are interested or lack independence relative to the decision, do not act in good faith, act in a manner that cannot be attributed to a rational business purpose or reach their decision by a grossly negligent process that includes the failure to consider all material facts reasonably available."[52] The D.C. Council also expressly contemplated, in applying the standard to the actions of unit owners' associations,

---

[50] Another issue we refrain from addressing, as the parties have not focused on it, is whether the purported deficiencies of the amended bylaws might entitle appellants to relief only against the Developer defendants (had appellant filed a timely lawsuit against them), and not against Erie, a third party that was granted a legally valid and recorded easement pursuant to D.C. Code § 42-1903.08(b) prior to appellants' acquisition of their condominium interests. *Cf. Ridgely*, 660 A.2d at 948-49.

[51] *Willens v. 2720 Wisconsin Ave. Co-op. Ass'n*, 844 A.2d 1126, 1137 (D.C. 2004) (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

[52] *Id.* (quoting *Brehm v. Eisner*, 746 A.2d 244, 264 n.66 (Del. 2000)).

that "officers would still be liable for instances of fraud or negligence and actions can be overturned where they fail to adhere to the association's instruments and procedures."[53]

Here, appellants have made no attempt to carry the burden of rebutting the presumption under the business judgment standard, and their arguments raised under the reasonableness standard are insufficient to warrant setting aside the amended bylaws. First, we reiterate that 2337 LLC, as the sole owner and declarant, had undisputed authority to "unilaterally amend" the bylaws and that the amendments became "effective upon recordation" prior to the sale to the individual unit owners.[54]

Moreover, we are unpersuaded by appellants' assertion that the rules adopted by the amended bylaws "only serve to benefit [Champlain's] neighbor, Erie" and "serve no legitimate interest [of] the Individual Owners."[55] As Erie points out, the bylaw amendments were adopted to settle litigation between Erie and the Developers over the Champlain Condominium's compliance with applicable height limitations

---

[53] Report on Bill No. 20-139 at 4.

[54] *See* D.C. Code § 42-1902.27(a).

[55] *See* Gary A. Poliakoff, 1 Law of Condominium Operations § 2:30 (Sept. 2023) ("[T]he business judgment rule will not serve to shield condominium boards from actions that have no legitimate relationship to the welfare of the condominium, or that deliberately single out individuals for harmful treatment.").

that might have precluded the rooftop buildout entirely. The litigation may also have been holding up issuance of the Champlain's certificate of occupancy, as appellant Mullikin said he was informed. Not only appellants, but all the unit owners in the Champlain Condominium, benefited from the settlement of the dispute with Erie. Appellants do not claim that the Developers entered into the settlement in bad faith or that the settlement itself was unreasonable in light of the posture and prospects of the litigation. Nor have appellants made a showing that the Developers put their own or Erie's interests ahead of the interests of future Champlain unit owners in settling the lawsuit. In essence, then, the restrictions on which the parties to the litigation agreed must be viewed as the price that needed to be paid for having the rooftop cabanas at all. Under those circumstances, we perceive no error in the trial court's refusal to set aside the amended bylaws.

## IV.

For the foregoing reasons, we affirm the judgment of the Superior Court.

*So ordered.*